BROWN SHOE COMPANY *v.* FOOKS.

5-1513                                                     310 S. W. 2d 816

Opinion delivered March 3, 1958.

[Rehearing denied March 31, 1958]

*Renderer, Nolde & Kleinschmidt,* St. Louis, Mo.; *Mehaffy, Smith & Williams* by *Robt. V. Light,* for appellant.

*D. Leonard Lingo* and *Harry L. Ponder,* for appellee.

PAUL WARD, Associate Justice. The Workmen's Compensation Commission and the Circuit Court, on appeal, awarded appellee compensation (for a limited time) based on an occupational disease. Appellant, the employer, seeks a reversal on one ground only — "That there was not sufficient competent evidence in the record to warrant the making of the order or award."

The following background facts are undisputed: Appellee, Clara C. Fooks, was employed by appellant, Brown Shoe Company, at its factory in Pocahontas from January 1947 until sometime in 1951, and also from March 17, 1956 until July 23, 1956. In the performance of her duties she sat on an adjustable steel chair or stool at a sewing table for a substantial portion of her eight hour workday. As a gauge stitcher, she worked at a sewing machine taking the shoes from a rack that was brought up to her. For some six weeks before July 23, 1956, appellee noticed pains in the buttock region, and on that date her doctor diagnosed her ailment as Ischial Bursitis. She had been unable to work up until the date of the hearing.

Dr. J. K. Farrish, Jr., a local physician, who examined appellee on July 23, 1956, testified that her complaint at that time was pain in the region of the ischial tuberosity of the pelvis. This bursa is located on what is known as the tail bones in a workman's language. It is bones on which human beings sit with a great majority of their weight. She related to me symptoms which were pain aggravated by sitting. After I obtained the

statement from her I examined her, and the examination revealed that the bursa over the ischial tuberosity was tender and enlarged. In answer to a hypothetical question Dr. Farrish, in speaking of appellee's condition stated: "I would say that it had been caused by the trauma, by the injury of sitting — to use a laymans term." The Doctor also stated that pressure, more or less constant pressure, is recognized as one of the causes of bursitis, but it is possible for one individual to develop bursitis from a particular kind or degree of pressure where other individuals could experience the same kind and degree of pressure and not develop bursitis. There are two bones known as the ischial tuberosity. The ischial bone is part of the pelvic girdle and it is the bone on which human beings sit, and it is near the lower part of the pelvis. Bursitis is caused by trauma which is local injury; infection, or calcium deposits.

By agreement the testimony of Dr. J. S. Speed, selected by appellant, was introduced in the record. He examined appellee on November 20, 1956, and reported in substance: Patient's chief complaint is pain over the ischial bones, that is the buttock region on which a person sits: His examination shows some pain in the region of the ischial tuberosities probably due to the pull of the hamstring muscles; there is no distention or enlargement of the ischial bursa and no evidence of any inflammatory lesion in the soft tissues over the ischial tuberosities; The X-ray shows a very small area of calcification apparently in the ischial bursa on the right side. His diagnosis was: "Ischial Bursitis, mild, right and left side." He further stated: "It is probable that this is an occupational type of disability which should clear up in a reasonable period of time without any residual permanent disability."

Based on all the testimony presented to it the full commission found: "That claimant's Ischial Bursitis is an occupational disease suffered as a consequence of the duties of her employment with the respondent employer herein." This finding was affirmed on appeal to the Circuit Court. There is, we think, substantial evidence

to affirm the Commission and the judgment of the Circuit Court.

The applicable law is found in § 81-1314 Ark. Stats. Supplement. Subsection (a) (5) of the above section reads: ''The following diseases only shall be deemed occupational diseases, except as otherwise provided in § 43 (11) (§ 81-1413).'' Following the above is set out in sub-section (a) (4) the names and descriptions of a large number of occupational diseases, among which is this: ''Synovitis, Temosynovitis, or Bursitis due to an occupation involving continual or repeated pressure on the parts affected.''

It is not insisted by appellant that § 81-1413 mentioned above has any bearing on this appeal, but it is strenuously insisted that appellee is barred from receiving compensation under the evidence when considered in connection with the provisions of sub-paragraph (a) (7) of said § 81-1314, which, in so far as it relates to this case, says: ''An employer shall not be liable for any compensation for an occupational disease unless such disease shall (a) be due to the nature of an employment in which the hazards of such disease actually exists, (b) and are characteristic thereof and peculiar to the trade, occupation, process, or employment, and (c) is actually incurred in his employment . . .'' The letters (a), (b) and (c) have been inserted in the above quoted portion for clarity and convenience.

It is our understanding that appellant is not relying on the language in sub-division (a) or (c) above. At any rate we think the evidence clearly sustains the Commission's findings in those respects. Appellant does rely heavily on the language used in sub-division (b) above.

At the outset of appellant's brief this statement is made: ''. . . the only question presented by this appeal is whether claimant's Ischial Bursitis is an 'occupational disease' under the provisions of the act.'' Following this the burden of the argument is that the record contains no evidence to show that Ischial Bursitis is

*characteristic* of or *peculiar* to the occupation in which appellee was engaged.

In the first place it is noted that, under the wording of the statute (81-1314 (a) (7)), the disease need not be peculiar to the *occupation*, but may be peculiar to the *process* or *employment*. These last two emphasized words, we think, have reference in this case, to sitting in one position continuously for long hours and not to manufacturing shoes. It was not incumbent on appellee to show that this process or type of employment *could* cause Ischial Bursitis because the only medical testimony in the record is to the effect that it actually did. This, we think, made out a *prima facie* case in favor of appellee under § 81-1314 (a) 4. We agree with the commission that "It is absolutely of no moment whether Ischial Bursitis is prevalent among claimant's co-workers or not . . ." If it were otherwise, then the first person to be affected would have no such evidence available. It would appear useless to burden appellee with producing evidence to show Bursitis is characteristic of and peculiar to a process which required her to sit on a stool eight hours a day in the face of undisputed evidence that such did cause her to contract the ailment.

Appellant's specific argument is that appellee should be denied recovery because she did not introduce evidence to show Ischial Bursitis is characteristic of and incidental to a process (of employment) which required her to sit on a stool or chair 8 hours a day, five days a week. When this argument is examined carefully we think it appears untenable under the law and facts of this particular case. The undisputed facts are that appellee has Ischial Bursitis, that it is caused by constant and repeated pressure on the parts affected, that the process in which she was engaged caused this very kind of pressure. The law (Ark. Stats. § 81-1314 (a) 4) conclusively presumes that Bursitis may be caused by "continual or repeated pressure" — the exact kind of pressure to which appellee was subjected except that the pressure to which she was subjected was both continual and repeated. If that kind of pressure is not characteristic of and peculiar to the work or process in which appellee was

engaged, then the statute is meaningless because otherwise the description of a process which would satisfy the statute defies the imagination. The key word which appellant seems to overlook is "hazards" in said subsection (7). The question is not whether the *disease* is characteristic of and peculiar to the kind of work appellee was doing, but whether the *hazard* (of such disease) bore such relation. There can be no doubt here that there was a *hazard* or risk involved in the *character* of work appellee was doing because it actually did cause her ailment. No less was the *hazard peculiar* to a process which entailed continual and repeated pressure on the tail bone for 8 hours a day for five days a week, because such abnormal pressure on the affected parts is not incident to many other processes of employment.

If it be conceded, and we do, that the exact meaning and application of the words referred to above are not crystal clear in the context in which they are used, then we think they should be interpreted in the light most favorable to appellee. This rule has been announced many times by this court. See: *Arkansas National Bank of Hot Springs* v. *Colbert,* 209 Ark. 1070 (at page 1073), 193 S. W. 2d 806, and the cases cited therein.

We have read and considered several cases from other jurisdictions cited by appellant, but find nothing in them contrary to the conclusion we have reached. These cases are: *Champion* v. *Gurley,* 299 N. Y. 406, 87 N. E. 2d 430; *American Maize Products Co.* v. *Nichiporchik,* 108 Ind. App. 502, 29 N. E. 2d 801; *Schmitt* v. *Industrial Commission,* 224 Wis. 531, 272 N. W. 486; *Fernandez* v. *Kiernan-Hughes Co.,* 23 N. J. Super. 394, 93 A. 2d 41; *Edlund* v. *Industrial Commission,* 122 Utah 238, 248 P. 2d 365, and; *Stokes* v. *Miller,* La. App., 50 So. 2d 509. We find that some of these cases deal with an "injury" or "accident" as opposed to an "occupational disease," and, in the others, it is not shown that the "disease" was mentioned in the statute as an occupational disease as in the case here.

Finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.

Harris, C. J., and Holt and Robinson, JJ., dissent; McFaddin, J., concurs.

Ed. F. McFaddin, Associate Justice, concurring. The Court is sharply divided in this case. Three Justices support the Commission's conclusion that an occupational disease was established. Three Justices vote to reverse the Commission's holding, as they are of the view that no occupational disease was shown. Since I am concurring to affirm the judgment, it is incumbent on me to state my reasons. My view is that no occupational disease was established; but I vote to make the ward to Mrs. Fooks since I am of the opinion that she suffered an accidental injury arising out of and in the course of her employment. Thus, Mrs. Fooks recovers, but with a majority of the Court holding that no occupational disease was established. With the foregoing explanation, I come now to the process by which I reach my conclusion.

In *Triebsch* v. *Athletic Mining,* 218 Ark. 379, 237 S. W. 2d 26, the workman suffered a disability. The Commission denied recovery because it found that no occupational disease had been shown. We agreed that no occupational disease had been established; but we held that the worker should recover because he had suffered a disability arising out of and in the course of his employment; and we said:

"But on the *accidental injury* phase of the case, the uncontradicted evidence shows that the claimant suffered an *accidental injury* within the purview of our cases, such as: *Herron Lbr. Co.* v. *Neal,* 205 Ark. 1093, 172 S. W. 2d 252; *McGregor* v. *Arrington,* 206 Ark. 921, 175 S. W. 2d 210; *Harding Glass Co.* v. *Albertson,* 208 Ark. 866, 187 S. W. 2d 961; *Sturgis Bros.* v. *Mays,* 208 Ark. 1017, 188 S. W. 2d 629; *Murch-Jarvis Co.* v. *Townsend,* 209 Ark. 956, 193 S. W. 2d 310; and *Batesville White Lime Co.* v. *Bell,* 212 Ark. 23, 205 S. W. 2d 31. . . .

"In *Murch-Jarvis Co.* v. *Townsend, supra,* the worker became disabled from inhaling fumes and dust in the

course of his work in a smelter room. We held such disability to be 'an accidental injury within the meaning of our Workmen's Compensation Law,' saying: 'There are numerous cases from other jurisdictions holding that a disease, or an aggravation thereof, resulting from inhalation of dust particles or fumes may constitute an accident, or injury, within the meaning of the particular act involved.'

"In *Batesville White Lime Co.* v. *Bell, supra,* the inhalation of dust particles caused heart trouble. We held such to be an accidental injury, saying: 'Now there is nothing in the proof in this case to justify a conclusion that the injury to appellee's heart by breathing the excessive amount of dust was one which appellee might have reasonably expected or anticipated. Certainly it was accidental as far as he was concerned; and there is much authority for a holding that an injury, not necessarily the result of one impact alone, but caused by a continuation of irritation upon some part of the body by foreign substances may properly be said to be accidental.' "

Likewise, in the case of *Scobey* v. *Southern Lbr. Co.,* 218 Ark. 671, 238 S. W. 2d 640, the worker suffered a disability by inhaling emery dust which caused him to die of cancer of the lungs. There was no trauma in the sense of a physical blow, but there was a disability arising out of and in the course of the employment; and a recovery was allowed by this Court.

So, in the case at bar, Mrs. Fooks has suffered a disability arising out of and in the course of her employment in that she suffers from ischial bursitis; and she is entitled to recover compensation for such disability arising out of and in the course of her employment. But, as I see the record, there is no evidence of a substantial nature that ischial bursitis is an occupational disease "peculiar to the trade, occupation, process, or employment." The words just quoted come to us from § 81-1314 of our Statutes, and it is only when those conditions are met by proof that an occupational disease can be said to have been established.

For the reasons herein stated, I c o n c u r in the recovery.

J. SEABORN HOLT, J., dissenting. We have consistently held since our earliest construction of our Workmen's Compensation Law (as early as *Birchett* v. *Tuf-Nut Garment Manufacturing Co.*, 205 Ark. 483, 169 S. W. 2d 574) that it does not call for general accident insurance and was never intended so to do. In my view, the effect of the majority opinion here is to take steps on the road toward making our compensation law, in effect, general accident insurance.

Bursitis, under the Workmen's Compensation Law, is listed as an occupational disease along with a long list of other occupational diseases. However, the following limitations for recovery of any compensation for any of these listed diseases (including bursitis) are set out in Ark. Stats., 1947, § 81-1314a, (7), and first must be met: "An employer shall not be liable for any compensation for an occupational disease unless such disease shall be due to the nature of an employment in which the hazards of such disease actually exist, and are characteristic thereof and peculiar to the trade, occupation, process, or employment, and is actually incurred in his employment. . . ."

Appellant's liability, as I see it, must turn on the construction to be placed on the above statutory language, which appears not to have been heretofore construed by this court. Obviously, the lawmakers must have had some purpose in enacting it. To me it simply means what it says, and that is, before any occupational disease is compensable, the burden is on the claimant to show that her disability was within the terms of the act, and that the disease (bursitis) was due not only to the nature of the employment in which the hazard of the disease existed, but the burden was on her to go further and show that such disease was characteristic of such employment and peculiar to the particular disease. There is no *prima facie* presumption that appellant's claim comes within the provisions of the law. See *John Bishop Const. Co.* v. *Orlicek*, 224 Ark. 182, 272 S. W. 2d 820. There is not one scintilla of evidence that I can find in this record that even tends to show that bursitis was characteristic of and peculiar to the kind of employment in which appellee was engaged.

There was no evidence that any other employee at appellant's plant, doing similar work as appellee, or of any other employee in any plant in the United States doing similar work, had ever suffered bursitis. How then can it be said that the employer here could have known, or must have known, that bursitis was characteristic of and peculiar to the occupation in which appellee was engaged here. It is also significant that among the literally thousands of stenographers, telephone operators, executives, lawyers, judges and other employees throughout this nation who do their work sitting in chairs, as appellee here, appellee has been unable to cite one single case in this nation similar to the one here and decided by an appellate court. Surely the legislature must have thought and intended in all fairness to employers, that they should first have fair warning of any hazards attached to the employment, such as we have here, before liability would be saddled on them.

I would reverse the judgment and remand to the Circuit Court with instructions to direct the Commission to dismiss the claim.