SANYO MANUFACTURING CORPORATION and
GREAT AMERICAN INSURANCE COMPANY
*v.* Margaret LEISURE

CA 84-103                                          675 S.W.2d 841

Court of Appeals of Arkansas
Division I
Opinion delivered October 3, 1984
[Rehearing denied November 21, 1984.]

*Daggett, Van Dover, Donovan & Cahoon,* by: *Robert J. Donovan,* for appellant.

*Whetstone & Whetstone,* for appellee.

GEORGE K. CRACRAFT, Chief Judge. Sanyo Manufacturing Corporation appeals from a decision of the Arkansas Workers' Compensation Commission that Margaret Leisure

had developed an occupational disease while in the employ of the appellant and was entitled to temporary total disability from April 2, 1982 to a date yet to be determined. The appellant maintains a plant in Forrest City for the manufacture of television sets. The appellee was first employed there in September 1979 and eventually was assigned to the assembly line where the television sets were fine tuned. In that job she had to lift television sets which weighed fifty pounds and place them on the assembly line. Then she bent over and reached around to the back of each set to hook it up to an antenna. She then was required to fine tune from seven to thirteen channels on each set. In tuning the sets it was necessary that she keep her arm in a bent position and use constant twisting wrist motion. She would repeat this procedure thirty times an hour on 240 television sets per day. On March 6, 1981, after working for several hours on the line she experienced pain in her hand, arm and neck, which she attributed to the heavy lifting and the repetitive work which her job required. She was seen by Dr. Jacobs in Forrest City, was diagnosed as having tenosynovitis, and remained off work for approximately three months for which she received workers' compensation benefits. She was treated by Dr. Richardson during this period.

Her doctor then returned her to work with restrictions and she was assigned duties which would not require heavy lifting or fine tuning, but ultimately she was reassigned to a fine tune assembly line. She testified that she continued to experience pain and swelling in her hand and arm and consulted Dr. William Traylor, who diagnosed her condition as tenosynovitis with carpal tunnel syndrome and referred her to Dr. Edward Kaplan, a neurosurgeon. Dr. Kaplan confirmed the tenosnovitis but he said the carpal tunnel syndrome was only suspected. He subsequiently released her to work without heaving lifting and with other restrictions on the use of her hand on August 23, 1982. She was also placed on restrictive layoff which meant that Sanyo had no available job for appellee that could accommodate her work restrictions.

The appellant concedes that appellee suffers from tenosynovitis and that the Commission properly classified it

as an "occupational disease," but contends that the claim should have been denied in its entirety because the appellee did not establish all of the elements required by our statute to make an occupational disease compensable. Appellant argues that:

(1) appellee failed to prove "a causal connection between the occupation or employment and the occupational disease by clear and convincing evidence" as required by Ark. Stat. Ann. § 81-1314(a)(5)(i);

(2) appellee failed to prove that "the hazards of such disease actually exist and are characteristic thereof and peculiar to the trade, occupation, process or employment and is actually incurred in his employment" as required by Ark. Stat. Ann. § 81-1314(a)(7);

(3) appellee failed to overcome the prohibition in Ark. Stat. Ann. § 81-1314(a)(5)(iii) that "No compensation is payable for any ordinary disease of life to which the general public is exposed."

Appellant first argues that the appellee failed to establish a causal connection between the disease and her occupation by clear and convincing evidence. On appellate review we affirm the findings of the Workers' Compensation Commission if they are supported by substantial evidence and we review the evidence in the light most favorable to the Commission's finding. It is not a prerequisite to a finding of causal connection that is based upon medical testimony. *Treadaway* v. *Riceland Foods,* 268 Ark. 658, 594 S.W.2d 861 (Ark. App. 1980). It is the Commission's duty to translate all of the evidence presented to it into findings of fact utilizing its advantage of expertise and superior knowledge of industrial demands, limitations and requirements.

There was evidence that the onset of appellee's first period of disability in 1981 came about while she was performing a job requiring repetitive twisting motions and heavy lifting. Her condition improved after she was returned to work which required neither lifting nor repetitive twisting. The onset of the second episode occurred after she

had returned to her former job. She attributed her disability to the nature of the work she was required to perform. There was medical testimony that work that is of a continuous, repretitive nature involving bending of the wrist and working with weights in a flexed position does tend to predispose one to the disorder suffered by the appellee. There was evidence that this type of job activity was common in appellant's plant and that appellee's disease was a frequent one in that industrial environment. We cannot conclude that the Commission's finding of a causal connection is not supported by substantial evidence or that reasonable minds could not have arrived at the conclusion it reached.

Appellant next contends that Ark. Stat. Ann. § 81-1314(a)(7) (Repl. 1976) requires that an occupational disease be compensable only when it is peculiar to the occupation in which the claimant is engaged and, if it can be contracted by one engaged in any other occupation, benefits are excluded under this section. This argument was rejected by the court in *Brown Shoe Company* v. *Fooks*, 228 Ark. 815, 310 S.W.2d 816 (1958).[1] In that case the employer manufactured shoes. In the performance of her duties the employee sat on an adjustable steel chair at a sewing table for eight-hour work days. She contracted bursitis of the tailbone which caused her great pain and was aggravated by sitting. There was medical testimony that this condition was caused by "constant pressure to the tailbone."

The employer appealed from a Commission award of benefits for the occupational disease arguing that there was no evidence showing that this particular industrial disease was characteristic of or peculiar to the occupation of the shoe industry. The court disposed of that argument in the following language:

> In the first place it is noted that, under the wording of the statute (§ 81-1314(a) (7)) the disease need not be

---

[1]*Brown Shoe* was decided under the original act which declared that only diseases listed in it were to be considered "occupational" ones. The limitation to scheduled diseases was removed by Act 1227, extended session 1976, but the language relied upon in *Brown Shoe, supra,* was retained.

peculiar to the *occupation,* but may be peculiar to the *process* or *employment.* These last two emphasized words, we think, have reference in this case, to sitting in one position continuously for long hours and not to manufacturing shoes. . . .The key word which appellant seems to overlook is "hazards" in said subsection 7. The question is not whether the *disease* is characteristic of and peculiar to the kind of work appellee was doing, but whether the *hazard* (of such disease) bore such relation. There can be no doubt here that there was a *hazard* or risk involved in the *character* of work appellee was doing because it actually did cause her ailment. No less was the *hazard peculiar* to a process which entailed continual and repeated pressure on the tailbone for eight hours a day for five days a week, because such abnormal pressure on the affected parts is not incident to many other processes of employment.

If it be conceded, and we do, that the exact meaning and application of the words referred to above are not crystal clear in the context in which they are used, then we think they should be interpreted in the light most favorable to appellee.

This decision and those we have examined from other jurisdictions make clear that an occupational disease is "characteristic" of an occupation, process or employment where there is a recognizable link between the nature of the job performed and an increased risk in contracting the occupational disease in question. We agree with the court's reasoning in *Brown Show Company* and conclude that the words "process" and "equipment" have reference in this case to a job requiring continuous repetitive bending of the wrist and working with weights in a flexed position, and not to the manufacture of television sets.

We find no merit in appellant's argument that because there was evidence that people who do not work in factories suffer from tenosynovitis, this disease should be excluded from coverage under Ark. Stat. Ann. § 81-1314(a)(5)(iii) as an "ordinary disease of life to which the

general public is exposed." We conclude that this places an entirely too narrow interpretation upon the wording of that statute, particularly in view of the purposes for which our workers' compensation laws were enacted. A proper interpretation of this section requires that it be read in conjunction with the Act as a whole and particularly those sections dealing with the same subject matter. Although this section was not referred to in the *Brown Shoe Company* case, the court's decision there foretells the result we must reach. To interpret § 81-1314(a)(5)(iii) as narrowly as appellant suggest conflicts with § 81-1314(a)(7) as construed in *Brown Shoe Company*. In that case there was nothing to indicate that bursitis was a disease peculiar to factory workers or was not suffered by the general public. The court's decision turned on the increased risk of contracting the disease due to the nature of the employment.

As we construe § 81-1314(a)(5)(iii) the fact that the general public may contract the disease is not controlling. The test of compensability is whether the nature of employment exposes the worker to a greater risk of that disease then the risk experienced by the general public or workers in other employments. In *Booker* v. *Duke Medical Center,* 297 N.C. 458, 256 S.E.2d 189 (1979) it was stated:

> For example, it is clear that the Law was not intended to extend to an employee in a shoe factory who contracts pneumonia by standing next to an infected co-worker. In that example, the employee's exposure to the disease would have occurred regardless of the nature of the occupation in which he was employed. To be within the purview of the Law, the disease must be so distinctively associated with the employee's occupation that there is a direct causal connection between the duties of the employment and the disease contracted.

Courts in other jurisdictions have likewise rejected the proposition that a particular illness cannot qualify as an "occupational disease" merely because it is not unique to the injured employee's profession. *Carter* v. *Lakey*

*Foundry Corp.,* 118 Mich. 325, 324 N.W.2d 622 (1982); *Young* v. *City of Huntsville,* 342 So.2d 918 (Ala. Civ. App. 1976), cert. denied, 342 So.2d 924 (Ala. 1977); *Aleutian Homes* v. *Fischer,* 418 P.2d 769 (Alaska 1966); *State ex rel. Ohio Bell Telephone Co.* v. *Krise,* 42 Ohio St. 2d 247, 327 N.E.2d 756 (1975); *Briggs* v. *Hope's Windows,* 284 App. Div. 1077, 136 N.Y.S.2d 41 (1954); *Underwood* v. *National Motor Castings Division,* 329 Mich. 273, 45 N.W.2d 286 (1951).

The appellant finally contends that even if the appellee were entitled to benefits for occupational disease the Commission erred in that there was no substantial evidence to support its finding that she continued to be temporarily and totally disabled after August 23, 1982. This argument was based on Dr. Kaplan's testimony that he had released her to work without heavy lifting on August 23rd and that she was able on that date to perform light work. She did not return to work because there was no work available to her under those limitations at Sanyo. Appellant argues that under Ark. Stat. Ann. § 81-1302(e) "disability" means "incapacity because of injury to earn, in the same or any other employment, the wages which the employee was receiving at the time of the injury" and that as there was no evidence that appellee has sought work elsewhere, her lack of earnings resulted from *unavailability* of work, not from an *incapacity to earn.* We find no merit in this contention. The situation here is the same as in *Arkansas State Hwy. Dept.* v. *Breshears,* 272 Ark. 244, 613 S.W.2d 392 (1981) where that same argument appears to have been made. There the court stated:

> Although Dr. Cash released claimant for light work, there was no testimony pertaining to his ability to earn the same or any part of the wages he was receiving at the time of the injury. The Workers' Compensation Commission is in a better position to evaluate the claimant's ability to earn wages in the same or other employment. And, as in this case, once the Commission has before it firm medical evidence of physical impairment and functional limitations, it has the advantage of its own superior knowledge of

industrial demands, limitations, and requirements. It can apply its knowledge and experience in weighing the medical evidence of functional limitations together with other evidence of the manner in which the functional disability will affect the ability of the injured employee to obtain or hold a job and thereby arrive at a reasonably accurate conclusion as to the extent of the disability.

We cannot conclude that the finding of the Commission is not supported by substantial evidence.

Affirmed.

GLAZE and COOPER, JJ., agree.