Ilee WILLMON *v.* ALLEN CANNING CO.

CA 91-251                                    828 S.W.2d 868

Court of Appeals of Arkansas
Division I
Opinion delivered May 6, 1992

*Joseph C. Self*, for appellant.

*Davis, Cox & Wright*, by: *Constance G. Clark*, for appellee.

MELVIN MAYFIELD, Judge. Ilee Willmon has appealed a decision of the Workers' Compensation Commission which dismissed her claim because "the claimant has failed to meet her burden of proof."

Appellant's first argument is that the Commission did not base its decision on a de novo review of the entire record and the case should be remanded. The Commission, after reciting that it had conducted a de novo review of the entire record and finding that the appellant had failed to meet her burden of proof, affirmed and adopted the opinion of the law judge. In *White* v. *Air Systems, Inc.*, 33 Ark. App. 56, 800 S.W.2d 726 (1990), we explained the Commission's duty in reviewing a decision of an administrative law judge.

> The Arkansas Workers' Compensation Commission is not an appellate court. *Shippers Transport, supra.* [*Shippers Transport* v. *Stepp*, 265 Ark. 365, 578 S.W.2d 232 (1979)] It is, instead, the factfinder, and as such its duty and statutory obligation is to make specific findings of fact, on de novo review based on the record as a whole, and to decide the issues before it by determining whether the party having the burden of proof on an issue has established it by a preponderance of the evidence. *See Shippers Transport, supra: Johnson* v. *Hux*, 28 Ark. App. 187, 772 S.W.2d 362 (1989); *Jones* v. *Tyson Foods, Inc.*, 26 Ark. App. 51, 759 S.W.2d 578 (1988); Ark. Code Ann. § 11-9-705(a)(3) (1987).

33 Ark. App. 59. And in *Wright* v. *American Transportation*, 18 Ark. App. 18, 709 S.W.2d 107(1986), we held that the Commission must make sufficient factual findings to justify the decision made so that the appellate court can conduct a meaningful review of the commission's decision. However, we held in *Second Injury Fund* v. *Robison*, 22 Ark. App. 157, 737 S.W.2d 162 (1987), that

a Commission opinion may contain findings of fact sufficient to satisfy the Wright standard when it adopts an opinion of the law judge which contains adequate findings. 22 Ark. App. at 166. By affirming and adopting the decision of the law judge in the instant case, the Commission supplied us with adequate findings of fact so that we can conduct a meaningful review.

Appellant also argues that the Commission's decision is not supported by substantial evidence. On reviewing a decision of the Workers' Compensation Commission, we must view the evidence in the light most favorable to the findings of the Commission and give the testimony its strongest probative force in favor of the action of the Commission. *McCollum* v. *Rogers*, 238 Ark. 499, 382 S.W.2d 892 (1964). Our standard of review on appeal is whether the decision of the Commission is supported by substantial evidence. *City of Fayetteville* v. *Guess*, 10 Ark. App. 313, 663 S.W.2d 946 (1984). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Phillips* v. *State*, 271 Ark. 96, 607 S.W.2d 664 (1980). We do not reverse a decision of the Commission unless we are convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached. *Silvicraft, Inc.* v. *Lambert*, 10 Ark. App. 28, 661 S.W.2d 403 (1983). These rules insulate the Commission from judicial review and properly so, as it is a specialist in this area and we are not. But a total insulation would obviously render our function in these cases meaningless. *Boyd* v. *General Industries*, 22 Ark. App. 103, 733 S.W.2d 750 (1987).

Appellant testified that on March 16, 1990, while she was employed by appellee canning company, her apron got caught in a conveyor belt and as the apron was released she was flipped over onto a concrete floor. She was taken by ambulance to the Crawford County Memorial Hospital where she stayed until March 29. She has not returned to work since her injury. She testified she is unable to work because her foot turns inward, swells, and is painful. She said Dr. R.W. Ross, her treating physician, had not released her to return to work, but she had not seen him for several months. She explained that when she returned to see him in April she discovered appellee had controverted her claim and would no longer pay the medical bills and she was unable to afford to pay the bills herself.

Dr. William L. Griggs, a neurologist, in a report dated March 24, 1990, diagnosed appellant as suffering from:

1.  Conversion Reaction.
    Inversion Right Foot.
    Nondermatomal Numbness Involving Trunk, Left Hand, Right Leg.

2.  No Neurological Disease Found.

In the hospital discharge summary dated March 29, 1990, Dr. Ross stated:

> As each day progressed, there were fewer and fewer findings but more complaints on the part of the patient. On about the third hospital day the patient announced to this attending physician that something was severely wrong with her back and right leg, that the right leg had shorten itself, was rotating the foot inward and that there was no way that she could control this. At this point, she was seen in consultation with Dr. Albert MacDade, a local neurosurgeon, Dr. Claude Martimbeau, a local orthopaedist, and Dr. William Griggs, a local neurologist. Tho[r]ough neurologic, neurosurgerical [sic] and orthopaedic investigation and stud[ies] were done and there were no forthcoming positive findings. All modalities of investigation indicated that indeed there was no neurologic involvement, no fractures, no dislocations and no other abnormalities. Dr. Griggs' very thorough neurologic and musculoskeletal evaluation in fact showed that the patient could straight[en] her leg and did not have abnormal function to that right lower extremity. It is therefore our conclusion that she is suffering a conversion hysteria and really believes that she cannot straighten the leg.

Anitra Fay, Ph. D., a psychologist, reported that appellant was "very defensive" in responding to the MMPI and the profile validity was reduced. Nevertheless, she said the appellant produced an abnormal profile, tending to be hypochondriacal in outlook, and she (Fay) recommended psychiatric consultation.

On April 11, Dr. Griggs reported that appellant's neurological exam continued to show multiple functional findings with no organic findings, and that she "has a conversion reaction." And

on May 18, 1990, the doctor reported motor nerve conduction velocity of the right lower extremity was normal as was the EMG. He concluded there had been no change from the April study.

In his opinion, which by adoption became the opinion of the Commission, the law judge stated:

> Drs. Ross, Griggs and Fay all shared the same opinion that the claimant in all probability was suffering from a conversion reaction. Conversion reaction is defined in *Taber's Cyclopedic Medical Dictionary* as follows:
>
>> A conversion type of hysterical neurosis in which there is loss of or alteration in physical functioning suggesting a physical disorder but instead representing the expression of a psychological conflict or need.

The Arkansas appellate courts have recognized conversion reaction as a compensable condition. In *Boyd* v. *General Industries*, 22 Ark. App. 103, 733 S.W.2d 750 (1987), we reversed the Commission's refusal to award benefits for a psychological reaction to a compensable injury. We stated:

> The threshold issue is whether the effects of this kind of mental disorder or psychoneurosis, if causally related to an on-the-job injury, are compensable. In *Wilson & Co.* v. *Christman*, 244 Ark. 132, 141, 424 S.W.2d 863, 869 (1968), the supreme court approved the following statement from Larson:
>
>> . . . [W]hen there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis, conversion hysteria or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable. Dozens of cases, involving almost every conceivable kind of neurotic, psychotic, depressive, or hysterical symptom or personality disorder have accepted this rule.
>
> Clearly the disabling effects of this type of disorder are compensable if the requirement of a causal connection is met. Although arguments can be made that this type of

mental disorder ought not to be compensable, *see e.g.*, the discussion in *Deziel v. Difco Laboratories, Inc.*, 403 Mich. 1, 268 N.W.2d 1 (1978), neither we nor the Commission are free to disregard the supreme court's holding in *Christman*.

22 Ark. App. at 108-109.

The law judge's opinion in the instant case stated that "the two questions that must be addressed" were (1) is the conversion reaction causally connected to the claimant's injury of March 16, 1990, and (2) if there is a causal connection, is the condition disabling.

We note that the opinion assumes that the appellant suffered from a "conversion reaction." Certainly, the evidence supports that assumption. But the law judge's opinion goes on to say that even if there was such a causal connection "there is absolutely no medical proof that this condition is disabling."

This statement completely overlooks the March 24, 1990, report of Dr. Griggs which stated that appellant had an "inversion" of her right foot. The law judge's statement also overlooks the March 29, 1990, discharge summary of Dr. Ross which stated it was his and Dr. Grigg's conclusion that appellant "is suffering a conversion hysteria and really believes that she cannot straighten the leg." And the law judge's statement also overlooks the April 16, 1990, "progress notes" of Dr. Ross which state he had observed that appellant "carries her right foot internally rotated and gives to it as if there was a difference in the length of her legs." The "progress notes" also state, "I do not think it advisable that she try to work at the present time because of the way she walks and carriers her foot, she would probably stumble and hurt herself."

■ The law judge's opinion concluded that the appellant failed to prove by a preponderance of evidence that "the conversion disorder as diagnosed by the treating physicians was and is causally related to her compensable injury of March 16, 1990," or that "the conversion disorder is disabling." Guided by our standard of review as set out above, we do not think the law judge's opinion, adopted by the Commission, is supported by substantial evidence. Therefore, we reverse the Commission's

decision and remand this case for a determination of the workers' compensation benefits to which appellant is entitled as a result of the conversion reaction she suffered as a result of the compensable injury sustained on March 16, 1990.

Reversed and remanded.

COOPER, and DANIELSON, JJ., agree.