CROSSETT SCHOOL DISTRICT, et al.
*v.* Carolyn GOURLEY

CA 94-818                                    899 S.W.2d 482

Court of Appeals of Arkansas
En Banc
Opinion delivered June 7, 1995

*Public Employee Claims*, by: *Nathan C. Culp*, for appellant.

*Griffin, Rainwater & Draper*, by: *Gary M. Draper*, for appellee.

JAMES R. COOPER, Judge. The appellant appeals from a decision of the Workers' Compensation Commission finding the appellee's sinus difficulties a compensable occupational disease. On appeal, the appellant argues that the Commission erred in finding that the appellee proved by clear and convincing evidence that she suffered an occupational disease as defined in the Arkansas Workers' Compensation Act. We affirm.

In determining the sufficiency of the evidence to sus-

tain the findings of the Workers' Compensation Commission, we review the evidence in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence. *Grimes* v. *North American Foundry*, 42 Ark. App. 137, 856 S.W.2d 309 (1993). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *City of Fort Smith* v. *Brooks*, 40 Ark. App. 120, 842 S.W.2d 463 (1992). We do not reverse a decision of the Commission unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusion arrived at by the Commission. *Willmon* v. *Allen Canning Co.*, 38 Ark. App. 105, 828 S.W.2d 868 (1992).

■ Where the condition involved is a disease (as opposed to an accidental injury), the claim is compensable only if the disease is an "occupational" one as defined in our Workers' Compensation Act and the claimant proves by clear and convincing evidence a causal connection between the employment and the disease. *See* Ark. Code Ann. § 11-9-102(4), - 601(e) (1987); *Osmose Wood Preserving* v. *Jones*, 40 Ark. App. 190, 843 S.W.2d 875 (1992). An "occupational disease" is defined as any disease that results in disability or death that arises out of or in the course of the occupation or employment. Ark. Code Ann. § 11-9-601(e)(1)(1987).

■■ The fact that the general public may contract a disease is not controlling; the test of compensability is whether the nature of the employment exposes the worker to a greater risk of the disease than the risk experienced by the general public or workers in other employments. *Osmose Wood Preserving* v. *Jones, supra; Sanyo Mfg. Corp.* v. *Leisure*, 12 Ark. App. 274, 675 S.W.2d 841 (1984). An occupational disease is characteristic of an occupation, process or employment where there is a recognizable link between the nature of the job performed and an increased risk in contracting the occupational disease in question. *Sanyo Mfg. Corp.* v. *Leisure, supra.* The increased risk test differs from the peculiar risk test in that the distinctiveness of the employment risk can be contributed by the increased *quantity* of a risk that is *qualitatively* not peculiar to the employment. 1 Arthur Larson, *The Law of Workmen's Compensation* § 6.30 (1994) (emphasis in original).

The appellee is a school teacher for the appellant. In the summer of 1989, a new heating and air conditioning system for the school was installed. As a result, leaks developed in various classrooms causing mold to grow in the appellee's classroom. The appellee suffered from pre-existing seasonal allergies which became constant and more severe after the mold developed in her classroom. The parties stipulated that the presence of this mold in the appellee's classroom caused her sinus difficulties which required several surgeries.

The appellant contends that the appellee did not prove that she suffered from an occupational disease because she did not show that due to the nature of her employment she was exposed to a greater risk of contracting the disease than the risk to which the general public is exposed. The appellant's argument is based on the premise that the increased risk was not one that may reasonably be expected to be present given the nature of the appellee's employment. The appellant cites several of our cases dealing with occupational disease to support its argument. We find, however, that the analyses from our previous cases support a finding that the appellee suffered from an occupational disease.

In *Osmose Wood Preserving* v. *Jones, supra,* the claimant was employed to replace and treat power line utility poles which required him to dig holes around the base of the poles. The claimant worked in Northwest Arkansas which is saturated with poultry production houses and where histoplasma capsulatum is endemic to the area. We affirmed the Commission's decision that the claimant contracted an occupational disease, histoplasmosis, on the findings that the claimant was exposed to chicken feces and areas with the histoplasmosis fungus on a daily basis due to the places where he was required to work, that this placed the claimant at a greater risk of contracting the fungus due to his work, and that the histoplasmosis was peculiar to the claimant's job because of its location. It should be obvious that *all* persons performing such work would not necessarily be exposed to chicken feces and that the claimant's position was unique.

In *Hope Brick Works* v. *Welch,* 33 Ark. App. 103, 802 S.W.2d 476 (1991), we affirmed the Commission's finding that the claimant contracted an occupational disease, silicosis, on the basis that the claimant was employed in a process which exposed

him to alumino-silicate dust used in brick making and that the hazard of silicosis was a hazard characteristic of the employment. Similarly, the hazard in the case at bar, although not necessarily characteristic of the occupation of a teacher, was characteristic of the appellee's particular employment causing her to be exposed to the mold leading to a greater risk of contracting the sinus difficulties.

Here, the Commission found that although the appellee's development of sinus difficulties as a result of the exposure to mold in the classroom is not necessarily peculiar to the occupation of a teacher, the exposure was "certainly peculiar and characteristic of this particular employment in that claimant's [appellee's] employment exposed her to a greater risk of that disease." The Commission found that the disease arose out of a hazard increased by the employment and that the particular employment hazard was a lengthy and abnormal exposure to mold in her classroom which placed the appellee at an increased risk of developing sinus difficulties. The Commission concluded that the appellee proved by clear and convincing evidence that she sustained an occupational disease arising out of and in the course of her employment.

From our review of the record, we conclude that there is substantial evidence to support the Commission's decision.

Affirmed.

JENNINGS, C.J., PITTMAN and ROGERS, JJ., dissent.

JOHN MAUZY PITTMAN, Judge, dissenting. The Commission found that although appellee's exposure to mold in the classroom was not peculiar to her occupation as a teacher, the exposure was "peculiar or characteristic of this particular employment in that [appellee's] employment exposed her to a greater risk of that disease." An occupational disease must be "due to the *nature of an employment* in which *the hazards* of the disease actually exist and *are characteristic thereof and peculiar to the trade, occupation, process, or employment.*" (Emphasis added). Ark. Code Ann. § 11-9-601(g)(1) (1987). Although the hazard of the disease need not be characteristic of the occupation, it must at least be peculiar to the "employment" or "process" involved. *Sanyo Mfg. Corp.* v. *Leisure*, 12 Ark. App. 274, 675 S.W.2d 841 (1984) (cit-

ing *Brown Shoe Co. v. Fooks*, 228 Ark. 815, 310 S.W.2d 816 (1958)). The majority correctly states that "an occupational disease is characteristic of an occupation, process or employment where there is a recognizable link between the *nature of the job performed* and an increased risk in contracting the occupational disease in question." *Sanyo Mfg. Corp.*, 12 Ark. App. at 279, 675 S.W.2d at 844 (emphasis added).

Here, however, appellee failed to show that the hazard to which she was exposed in the classroom was characteristic of and peculiar to her occupation as a school teacher, or that there was a link between the nature of the job performed and the increased risk. The hazard is from the place where she works and is unrelated to her employment duties or the nature of her work. In *Chadwick v. Public Service Co. of N.M.*, 731 P.2d 968 (N.M. App. 1986), the court stated that an occupational disease results from a distinctive feature of the kind of work performed by the claimant and others similarly employed, not by the peculiar place in which the claimant happens to work. To state that conditions of the claimant's workplace, "*unrelated to the claimant's occupation*, may give rise to a compensable occupational disease would, in effect, transform the law's protection into health insurance." *Id.*, 731 P.2d at 970 (emphasis added). Similarly, other jurisdictions have not classified a school teacher's allergies, caused by exposure to irritants present in the place worked, and unrelated to the nature of the job, as an occupational disease. *Lorentzen v. Industrial Comm'n of Arizona*, 790 P.2d 765 (Ariz. App. 1990); *Dando v. Binghamton Bd. of Educ.*, 490 N.Y.S.2d 360 (1985).

In *Hope Brick Works v. Welch*, 33 Ark. App. 103, 802 S.W.2d 476 (1991), the claimant's condition was caused by employment that involved a *process* which exposed him to alumino-silicate dust from the material from which brick was made. The court affirmed the Commission's finding that the hazard of silicosis was characteristic of the process to which the claimant was exposed. Further, unlike the claimant in *Osmose Wood Preserving v. Jones*, 40 Ark. App. 190, 843 S.W.2d 875 (1992), where the claimant's exposure to the hazard was peculiar to his job, appellee's exposure is unrelated to her job duties, but rather to the conditions of her workplace which are unrelated to her occupation.

I would reverse the Commission's classification of appellee's condition as an occupational disease and remand for the Commission to determine if appellee sustained a compensable accidental injury.

JENNINGS, C.J., and ROGERS, J., join.