Mark HEPTINSTALL *v.* ASPLUNDH TREE EXPERT
COMPANY and Reliance National Insurance Company

CA 03–11 137 S.W.3d 421

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered December 10, 2003

[Petition for rehearing denied January 14, 2004.*]

---

\* PITTMAN and VAUGHT, JJ., would grant.

Parker Law Firm, Ltd., by: Tim S. Parker, for appellant.

Frye & Boyce, P.A., by: Andy L. Caldwell, for appellees.

KAREN R. BAKER, Judge. The appellant employee in this case, Mark Heptinstall, worked for the employer, Asplundh Tree Expert Company, trimming and cutting trees and brush, clearing fence rows, chipping brush, and anything generally involving trimming and cutting trees and brush. Appellant and his supervisor testified that appellant routinely received scratches to his arm in the process of performing tree trimming duties related to his work. On or about November 6, 1999, a Saturday, appellant began to experience

pain and discomfort in his left arm. He testified that in addition to the pain, there was a mild redness around one of the scratches on his forearm.

The following Monday, appellant sought treatment at the emergency room of the hospital. The physician in the emergency room obtained a blood count on appellant that indicated a markedly elevated white-cell count, elevated at the time to 25,000, with about 8,000 being normal. After receiving the result of that test, the emergency room physician consulted Dr. Don Vowell, an orthopedic surgeon, who admitted appellant to the hospital and performed surgery that afternoon.

Dr. Vowell testified that the elevated white-cell count indicated the presence of infection. He was anxious to get appellant to the operating room before the pressure from the swelling could shut off the blood flow to the muscles and kill them. He explained that when a patient has something that causes pressure from swelling, such as pus or blood, the pressure from the swelling can build up greater than the arterial blood pressure pumping blood into the compartments of the arm. If that happens, then within six hours the muscle dies. Once the muscle dies, no treatment can bring it back. When Dr. Vowell operated on appellant, he found pus associated with a deep infection of the forearm. The entire forearm had to be opened to relieve the pressure and ensure that blood could get into the muscle. He testified that cultures taken from the arm subsequently grew an alpha strep (staph A), a particularly dangerous bacterial organism that sometimes does not respond well to antibiotics.

Dr. Vowell opined that within a reasonable degree of medical certainty, the scratches on appellant's arm were the entry wound through which the staph A entered his body. He described the time frame and process through which the staph A would have entered the wound. He discussed the fact that staph A is an organism that's around us on everything that we might come in contact with, but that it has to have some entrance into the body through some opening. He identified the entry time of the staph A into appellant's body as anywhere from three to six days prior to the Monday that appellant entered the hospital. His opinion was based upon his application of the organism's normal progression upon entering the body. Dr. Vowell explained that once the organism enters the body through a break in the skin, it starts growing within a day or two. It first starts growing into the soft tissues and after it is established, the patient begins to experience

pain. The pain increases substantially within forty-eight hours of the its onset resulting in severe pain for the patient. Appellant's history indicated that he had experienced pain on Saturday while lifting a battery. Dr. Vowell testified that this pain was consistent with an infection initiated a day or two before he experienced the pain while lifting. Approximately forty-eight hours after experiencing the first onset of pain, appellant sought treatment in the emergency room for excruciating pain and surgery was performed that afternoon. When asked if appellant might have received the scratches on his arm and later came into contact with the organism anywhere, Dr. Vowell confirmed that he could not say for sure where the organism was present and came into contact with the scratches on appellant's arm. However, given the length of the incubation period and the location of the infection underneath the scratches, he could state to a reasonable degree of medical certainty that the infection entered through the scratches received at work.

Dr. Vowell further explained that approximately fifty percent of the people die from infections such as the one appellant acquired. Dr. Vowell had personally changed appellant's dressing daily during the hospital stay and took appellant back to surgery a couple of times to clean the wound and close the wound. He testified that appellant would suffer some loss of strength resulting in a permanent impairment; however, he was still undergoing treatment and improving. He estimated that his permanent impairment rating would be ten-percent impairment to his upper extremity.

### The Commission's Decision

The Commission denied benefits saying that appellant "seeks compensation in the present claim for an occupational disease" and denied benefits finding that he had failed to prove by clear and convincing evidence that he sustained a compensable occupational disease. However, appellant did not argue that he sought compensation for an occupational disease and the Commission erred as a matter of law when it classified the injury as an occupational disease. Therefore, we reverse and remand for further finding of fact to be made on whether appellant established the requirements, we remand the case to the Commission to make a finding of fact on whether appellant established the requirements of a compensable accidental injury under Ark. Code Ann. § 11-9-102(4)(a).

## Standard of Review

█ █ When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Clark v. Peabody Testing Serv.*, 265 Ark. 489, 579 S.W.2d 360 (1979); *Crossett Sch. Dist. v. Gourley*, 50 Ark. App. 1, 899 S.W.2d 482 (1995). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Wright v. ABC Air, Inc.*, 44 Ark. App. 5, 864 S.W.2d 871 (1993). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; even if a preponderance of the evidence might indicate a contrary result, if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *St. Vincent Infirmary Med. Ctr. v. Brown*, 53 Ark. App. 30, 917 S.W.2d 550 (1996). The Commission is required to weigh the evidence impartially without giving the benefit of the doubt to any party. *Keller v. L.A. Darling Fixtures*, 40 Ark. App. 94, 845 S.W.2d 15 (1992).

█ █ The Commission also has the duty of weighing the medical evidence as it does any other evidence. *Roberson v. Waste Mgmt.*, 58 Ark. App. 11, 944 S.W.2d 858 (1997). However, "[I]f the claimant's disability arises soon after the accident and is logically attributable to it, with nothing to suggest any other explanation for the employee's condition, we may say without hesitation that there is no substantial evidence to sustain the commission's refusal to make an award." *Hall v. Pittman Constr. Co.*, 235 Ark. 104, 105, 357 S.W.2d 263, 263 (1962). Furthermore, an employee is not required to prove the source of an infection with absolute certainty because that is a manifest impossibility. *See Dega Poultry Co. v. Tanner*, 259 Ark. 396, 399, 533 S.W.2d 207, 209 (1976) ("Unless a claimant must prove the source of an infection with absolute certainty—a manifest impossibility —Tanner's proof amply supports the Commission's award."). In addition, the Commission cannot arbitrarily disregard any witness's testimony. *Freeman v. Con-Agra Frozen Foods*, 344 Ark. 296, 40 S.W.3d 760 (2001).

*Applicable Law*

 First, we address the Commission's classification of appellant's infection with the staph A bacteria as an occupational disease. Where the condition involved is a disease (as opposed to an accidental injury), the claim is compensable only if the disease is an "occupational" one as defined in our Workers' Compensation Act and the claimant proves by clear and convincing evidence a causal connection between the employment and the disease. *See* Ark. Code Ann. § 11-9-102(4)—601(e) (Repl. 2002); *Osmose Wood Preserving v. Jones,* 40 Ark. App. 190, 843 S.W.2d 875 (1992). An "occupational disease" is defined as any disease that results in disability or death that arises out of or in the course of the occupation or employment. Ark.Code Ann. § 11-9-601(e)(1) (Repl. 2002).

 The fact that the general public may contract a disease is not controlling; the test of compensability is whether the nature of the employment exposes the worker to a greater risk of the disease than the risk experienced by the general public or workers in other employments. *Osmose Wood Preserving v. Jones, supra; Sanyo Mfg. Corp. v. Leisure,* 12 Ark.App. 274, 675 S.W.2d 841 (1984). An occupational disease is characteristic of an occupation, process or employment where there is a recognizable link between the nature of the job performed and an increased risk in contracting the occupational disease in question. *Sanyo Mfg. Corp. v. Leisure, supra.* The increased risk test differs from the peculiar risk test in that the distinctiveness of the employment risk can be contributed by the increased *quantity* of a risk that is *qualitatively* not peculiar to the employment. *Crossett School Dist. v. Gourley,* 50 Ark.App. 1, 3, 899 S.W.2d 482, 483 (1995) (*citing* 1 Arthur Larson, The Law of Workmen's Compensation § 6.30 (1994) (emphasis in original)).

The Commission's analysis in denying benefits focused on the fact that the staph A organism can be anywhere in our environment and that anything that opens the skin can allow the bacteria to enter the body. In its opinion, the Commission relied upon the statute excluding liability of the employer unless the disease actually exists and is characteristic of and peculiar to the employment. Ark. Code Ann. § 11-9-601(g)(1) (Repl. 2002). It then stated:

> Dr. Vowell has opined that it was possible for the organism to enter

the claimant's body through the scratches that he received at work. However, an opinion stated in the term of possibilities is not sufficient to satisfy the requirement that medical opinions be stated within a reasonable degree of medical certainty.

Two problems with the Commission's opinion are readily apparent. First, it is factually inaccurate. Dr. Vowell in fact testified that, within a reasonable degree of medical certainty, the scratches on appellant's arm were the entry wound through which the staph A entered his body. Second, a finding of causation in a workers' compensation case does not need to be expressed in terms of a reasonable medical certainty when there is supplemental evidence supporting the causal connection. *Osmose Wood Preserving v. Jones, supra; see also Sneed v. Colson Corp.*, 254 Ark. 1048, 497 S.W.2d 673 (1973) (holding medical evidence is not necessary in establishing a causal connection).

The Commission's analysis also focused on the injury as being the staph A infection, rather than the scratches on appellant's arm. When the primary injury is shown to have arisen out of and in the course of the employment, the employer is responsible for any natural consequence that flows from that injury. *McDonald Equip. Co. v. Turner*, 26 Ark. App. 264, 766 S.W.2d 936 (1989). The fact that an injury sustained at work can make an employee susceptible to infection is not a new concept for this court. *See Pekin Wood Products Co. v. Graham* 207 Ark. 564, 181 S.W.2d 811 (1944) (finding that irritation to eyes made them more susceptible to gonorrheal infection where it appeared that an employee, sustaining injury to eyes, thereafter contracted a gonorrheal infection in eyes, though not having gonorrhea himself). In affirming the Commission's award of benefits, the court reasoned:

> While no witness testified that the irritation to appellee's eyes made them more susceptible to gonorrheal infection, we think the Commission had the right, in the exercise of sound judgment and discretion, to make the finding in this regard that it did make. It seems to us, as it did the Commission, a reasonable assumption that an inflamed and irritated eye, a conjunctivitis as the doctor testified, would be a ready portal of entry for the germ he did get or some other destructive germ that he might have gotten.

*Id.*, at 567, 181 S.W.2d at 812.

The situation in *Garrison Furniture Co. v. Butler*, 206 Ark. 702, 177 S.W.2d 738 (1944), is also analagous to the circumstances in this case. There O. C. Butler received scratches on his hands while at work in the factory of the furniture company on April 16-17, 1942. On April 20, he went to see Dr. Scott, and on April 21, he went to the hospital where he died on April 29 from lockjaw as a result of tetanus infection which entered the blood-stream through the so-called superficial wounds. Compensation for death benefits was awarded to the widow and child. The bacteria that roused the tetanus infection entered the body of Mr. Butler through the scratches he received while working for his employer in the factory, just as the bacteria that causes a staph A infection entered the body of appellant through the scratches he received while working for his employer trimming brush.

 Therefore, appellant was not required to prove that his staph infection qualified as an occupational disease. The appellant needed only to establish a causal link between the original injury and the subsequent complications for the injury to be compensable. *See Bearden Lumber Co. v. Bond*, 7 Ark.App. 65, 644 S.W.2d 321 (1983). While we do not defer to the Commission on questions of law, we also do not act as the fact finder. *Bagwell v. Falcon Jet Corp.*, 8 Ark. App. 192, 649 S.W. 2d 841 (1983). Because the Commission made no findings with regard to whether appellant sustained a compensable accidental injury, we remand the case to the Commission to make a finding of fact on whether appellant established the requirements of a compensable accidental injury under Ark. Code Ann. § 11-9-102(4)(a).

Accordingly, we reverse and remand for further proceedings.

HART, GRIFFEN, and CRABTREE, JJ., agree.

PITTMAN and VAUGHT, JJ., dissent.

LARRY D. VAUGHT, Judge, dissenting. I dissent from the majority opinion reversing this case because I believe that there is substantial evidence supporting the decision of the Commission. The majority has correctly set forth the standard of review we employ when addressing appeals from the Workers' Compensation Commission. The issue is not whether we might have reached a different result or whether the evidence would have supported a different finding; even if a preponderance of the evidence might indicate a contrary result, if reasonable minds could reach the Com-

mission's conclusion, we must affirm its decision. *St. Vincent Infirmary Med. Ctr. v. Brown*, 53 Ark. App. 30, 917 S.W.2d 550 (1996).

The majority maintains that the Commission erred by analyzing this case (through the A LJ's opinion that it adopted) as an occupational disease; however, appellant neither raised this issue below nor argued it on appeal. Before the evidence was taken at the hearing before the ALJ, appellees' counsel argued in part that the staph infection was an ordinary disease of life that anyone in the public would be susceptible of contracting. The ALJ asked appellees' counsel whether he was saying that the alleged injury should be considered under the occupational-disease statutes, and counsel responded that it might because Dr. Vowell testified that appellant may have contracted the infection from anywhere, such as a doorknob or out in the air. The ALJ asked for appellant's counsel's response, and he only maintained that Dr. Vowell opined that the infection set up in the scratches that appellant contends he received while working for Asplundh.

Clearly, appellant did not object to the injury being considered as an occupational disease. In addition, after the ALJ entered his decision finding that appellant failed to prove that he sustained a compensable occupational disease, appellant never argued that the ALJ erred in analyzing the claim as an occupational-disease case, which he could have done either in his notice of appeal to the Commission or in a brief filed with the Commission. In fact, appellant does not argue on appeal that the Commission erred as a matter of law deciding this case under the occupational-disease statutes.

Under the occupational-disease analysis, it is clear is that the Commission correctly found that the staph infection contracted by the appellant did not qualify as an occupational disease. Arkansas Code Annotated section 11-9-601(g)(1)(A) (Repl. 2002) provides in part:

> An employer shall not be liable for any compensation for an occupational disease unless:
>
> (A) the disease is due to the nature of an employment in which the hazards of the disease actually exist and are characteristic thereof and peculiar to the trade, occupation, process, or employment and is actually incurred in his employment.

The majority concludes that the injuries suffered were the scratches to the arm and that the staph infection was merely a natural consequence of the otherwise compensable injury. I dis-

agree. The appellant testified that he routinely got scratches on his arms and had never reported them before. The injury he sought compensation for was the staph infection, and the evidence supports the conclusion that it is unrelated to his employment.

The two cases cited by the majority to support reversal are both 1944 cases where the supreme court affirmed the Commission, and both were decided under the less strenuous standards in effect prior to Act 796 of 1993. While I agree that the evidence in this case could possibly support a finding of compensability, that is not a basis on which we can reverse. We must construe the Act strictly. *See* Ark. Code Ann. § 11-9-704(c)(3) (Repl. 2002). This includes the section that declares that findings of fact by the Commission are conclusive unless fraudulent or not supported by substantial evidence. Ark. Code Ann. § 11-9-711(b)(3) and (4) (Supp. 2003). I would hold that substantial evidence supports the Commission's decision that appellant failed to prove that he sustained a compensable occupational injury.

I am authorized to state that Judge Pittman joins in this dissent.