DENNIS, Justice.
In this workmen’s compensation review we consider only whether the trial court committed manifest error in deciding that the employee’s disability ceased eleven weeks after her accidental worker’s injury.
Plaintiff, Olivia Dupar Drummer, received a coccyx and low back injury on April 30, 1974, when she fell from the stool upon which she was seated at her employment. It is uncertain whether the stool collapsed and precipitated the fall, or whether the plaintiff’s fall caused the stool to break. This is not important, however, as the parties have stipulated that a work-related accident did occur. The employer’s insurer paid workmen’s compensation benefits until July 17, 1974, but denied any further liability.
Plaintiff instituted suit for total and permanent disability workmen’s compensation benefits, penalties and attorney’s fees. The district court rejected the plaintiff’s demands entirely, and the court of appeal affirmed without a full published opinion but by a memorandum opinion stating that it found sufficient evidence to support the trial judge’s evaluation of the witnesses’ credibility. Because this Court was of the opinion that the trial judge’s decision was not based upon testimonial credibility but upon manifest error in findings of fact induced by erroneous conclusions of law, we granted certiorari. 360 So.2d 874 (La.1978).
The day after the accident, May 1, 1974, the plaintiff consulted her family physician, Dr. E. J. Kalifey, who treated her and referred her to Dr. R. J. Beurlot, an Alexandria orthopaedist. Although Drummer displayed tenderness in the lower sacral area and over the proximal coccyx, Dr. Buerlot was unable to find any objective signs of injury during his examination of her on June 20, 1974, and recommended that she return to work immediately. Dr. Kalifey agreed that the plaintiff would be able to recover and return to work eventually, but, noting that the plaintiff appeared to him to be in great pain, he did not recommend that she return to work at that time. Dr. Kali-fey continued to see the plaintiff on a regular basis until January 6, 1975.
Dr. Kalifey later referred the plaintiff to Huey P. Long Charity Hospital in Baton Rouge, and x-rays were taken at the hospital on January 9, 1975. According to an unidentified radiologist at the hospital these x-rays manifested acute anterior angulation at the sacro-coccygeal articulation and indicated a possible fracture of the coccyx. The plaintiff did not return to Charity Hospital for further treatment, however, because of lack of transportation.
The plaintiff subsequently moved to New Orleans to live with her sister and was treated by Dr. F. Chalaire, a New Orleans general practitioner. Dr. Chalaire began conservative treatment and referred her to a neurosurgeon, Dr. Kenneth Vogel, on February 20, 1975, for evaluation. Dr. Vo-gel discovered objective signs of low back injury consisting of limited motion in all directions and point tenderness over the L 4 and L 5 facets bilaterally. Dr. Vogel found that the patient was experiencing symptoms of a chronic lumbosacral strain, or nerve root irritation, and he recommended continued conservative treatment consisting of medication and physical therapy. Dr. Vogel noted that this injury was probably the result of plaintiff’s accidental fall. The plaintiff returned to Dr. Vogel on March 20, 1975. Although her neurological examination was unchanged, Dr. Vogel reported that the patient claimed to be experiencing less pain. Dr. Vogel recommended that she continue conservative treatment for one additional month after which period he felt that she would be able to return to gainful employment.
*1335 The plaintiff, who had been a good employee for the defendant for three years before her accident, testified that she was unable to return to her job because she experienced sharp pains when forced to sit or stand for more that 35-40 minutes. The only doctor who testified that the plaintiff was able to return to work as of the date compensation payments were stopped was Dr. Beurlot. None of the doctors, including Dr. Beurlot, denied that the plaintiff was experiencing pain. On the contrary, all of the doctors acknowledged that an injury of the type described by the plaintiff is likely to cause considerable and persistent pain.
The trial court denied the plaintiff’s claim for additional compensation for written reasons which, in pertinent part, provided:
“There is no medical testimony that Plaintiff is or was disabled after June 20, 1974. All we have is the complaints she made to physicians that she had pains in the tailbone area, and that she knew she could not go to work. She admitted that all the doctors who examined her, had told her she could go back to work. She admitted she has not tried to go back to work. The deposition of Dr. Vogel, who saw Plaintiff twice in 1976, almost two years after the accident, gives her complaints as being in the lumbo sacral spine, rather than the coccyx area; and again, they are based upon subjective findings.
“It seems to the court, that if there was something radically wrong with Plaintiff’s lower spine, after two years and almost three years, following her accident, there should be some objective findings by some doctor, supporting her alleged disability. The court is asked, instead, to accept her complaints of pain and disability as truthful, and to award her compensation for total and permanent disability, with no objective findings by any doctor.
“The court feels and holds that Plaintiff bears the burden of proof showing disability, beyond the time for which insurer paid her compensation, eleven weeks or after July 16, 1974. The best evidence and the preponderance of the evidence is against her.”
As we construe the trial judge’s remarks, his rejection of plaintiff’s demands was based on a finding of fact that plaintiff did not prove any objective symptoms of injury which continued after June 20, 1974. After carefully reviewing the transcript of the testimony at trial and upon deposition, we conclude that this finding of fact was manifestly erroneous and probably resulted from the application of an incorrect rule of law.
Workmen’s compensation payments may be made “for only such injuries as are proven by competent evidence, or [sic] which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself.” (emphasis added) La. R.S. 23:1317. In interpreting the statutory language this Court has indicated that “objective conditions or symptoms” have a broad meaning, including “symptoms of pain, and anguish, such as weakness, pallor, sickness, nausea, expressions of pain clearly involuntary, or any other symptoms indicating a deleterious change in the bodily condition * * *." Frantz v. Schroeder, 184 La. 945, 947,168 So. 110, 111 (1936) (quoting with approval from Manning v. Pomerene, 101 Neb. 127, at 130, 162 N.W. 492, at 493 (1917)), and this Court has consistently held that subjective results which are imputable to the original objective conditions are compensable under law. Tantillo v. Librty Mutual Insurance Company, 315 So.2d 743 (La.1975); Frantz v. Schroeder, supra. Accordingly, the objective conditions or symptoms required by the statute are not limited to symptoms of an injury which can be seen or ascertained by touch. Moreover, there need not be a continued exhibition of objective symptoms to entitle the employee to compensation if the injury complained of is causally connected with the original accident. Tantillo v. Liberty Mutual Insurance Company, supra; Frantz v. Schroeder, supra; Vega v. Higgins Industries, 23 So.2d 661 (La.App.Orl.Cir.1945).
In applying these rules to the evidence in the instant case we find that the Charity *1336 Hospital x-ray report of January 9, 1975, and the testimony of Dr. Vogel relative to his physical examination of the plaintiff on February 20, 1975, constitute proof of objective conditions or symptoms emanating from the job related accident. Although the hospital radiologist was unable to positively identify the acute anterior angulation as a fracture of the coccyx, the abnormal position is itself plainly an objective condition or symptom. Similarly, the limited motion and point test sensitivity found by Dr. Vogel constitute objective symptoms as required by the statute. Although the trial judge assumed that the symptoms detected by Dr. Vogel did not result from the accident because they related to the “lumbo sacral spine,” the doctor himself testified without contradiction that the symptoms probably resulted from the plaintiff’s accidental fall at work.
Accordingly, we conclude that the trial judge committed manifest error in failing to award compensation benefits and medical expenses to plaintiff through April 20, 1975. The record adequately supports the decisions below rejecting penalties and attorney’s fees. It is our opinion, however, that the ends of justice require that the case be remanded to the trial court to allow the plaintiff the right to reopen these proceedings at once to prove the duration and estent of continuing disability beyond said date. Cockrell v. Penrod Drilling Co., 214 La. 951, 39 So.2d 429 (1949); Fontenot v. Myers, 93 So.2d 245 (La.App. 1st Cir. 1957). The trial and intermediate appellate courts judgments are set aside and the case is remanded to the court of appeal for rendition of a proper decree consistent with the opinion herein, awarding plaintiff compensation benefits and medical expenses through April 20, 1975 and reserving the right to the plaintiff to reopen the proceedings in district court herein at once to establish any further duration or extent of disablity. All costs are assessed to respondents.
REVERSED AND REMANDED.
DIXON, J., concurs.