Shirley Dean KELLER *v.* L. A. DARLING FIXTURES

CA 91-447                                        845 S.W.2d 15

Court of Appeals of Arkansas
Division II
Opinion delivered December 2, 1992

*Murrey L. Grider*, for appellant.

*Penix, Penix & Lusby*, by: *Richard Lusby*, for appellee.

MELVIN MAYFIELD, Judge. This is a workers' compensation case. The Administrative Law Judge's decision awarded the appellant 15 percent permanent disability to the body as a whole, based upon a 10 percent anatomical impairment to the body as a

whole, plus an additional 5 percent impairment of wage-earning capacity. The opinion of the Chairman of the Commission reversed the law judge's decision and dismissed the claim. Another Commissioner concurred, and the third Commissioner dissented. Each Commissioner wrote a separate opinion.

The first issue is whether the evidence will satisfy the requirements of Ark. Code Ann. § 11-9-704(c)(1) (1987), which provides that "any determination of the existence or extent of physical impairment shall be supported by objective and measurable physical and mental findings."

We think it will be helpful to begin our discussion by looking at the circumstances under which the above provision became a part of our "Workers' Compensation Law." The provision was added to our law by Act 10 of the Secondary Extraordinary Session of 1986. Section 10 of that act amended "Subsections (b) and (c) of Section 23 of Initiated Measure No. 4 of 1948, as amended, the same being Arkansas Statutes Annotated § 81-1323(b) and (c)." Section "c" was amended to read as follows: (The emphasized portion was added by the 1986 amendment.)

(c) Evidence and Construction. (1) At such hearing the claimant and the employer may each present evidence in respect of such claim and may be represented by any person authorized in writing for such purpose. Such evidence may include verified medical reports which shall be accorded such weight as may be warranted from all the evidence of the case. *Any determination of the existence or extent of physical impairment shall be supported by objective and measurable physical or mental findings.* (2) When deciding any issue, administrative law judges and the Commission shall determine, on the basis of the record as a whole, whether the party having the burden of proof on the issue has established it by a preponderance of the evidence. *Administrative law judges, the Commission, and any reviewing courts shall construe the provisions of this Act liberally, in accordance with the Act's remedial purposes. In determining whether a party has met the burden of proof on an issue, administrative law judges and the Commission shall weigh the evidence impartially and without giving the benefit of the doubt to any party.*

■  The above section has now been codified as Ark. Code Ann. § 11-9-704(c)(1)-(9) (1987). Before examining the language involved in this case, we note that the amendment specifically provides that the *provisions* of the Act *shall be construed liberally in accordance with the Act's remedial purposes*.

The opinion of the Chairman of the Commission contains a extended discussion of the requirement for *objective* physical or mental findings. It states that findings based solely on complaints of pain are purely subjective and insufficient but that diagnoses developed by physicians based on results obtained from clinical tests which reveal consistent and repeated responses to specific stimuli "fall toward the objective end of the continuum." At this point the opinion points out that "many conditions can *only* be diagnosed by such clinical tests, and by excluding findings based upon all such clinical tests claimants who suffer from such conditions are absolutely excluded from receiving permanent disability benefits." The opinion then notes that the term "objective" is subject to different interpretations, and states "with regard to the objectivity of symptoms, the term means perceptible to persons other than an affected person." *Webster's New Collegiate Dictionary* 791 (1973) is cited as authority for that definition. The opinion then expresses the belief that the legislature "used the term 'objective' to assure consistency in findings of permanent disability and to eliminate malingering." The opinion adds:

> However, we cannot conclude that the Legislature intended to exclude universally accepted diagnostic clinical evaluation or measuring procedures which yield consistent results on repeated trials under carefully controlled conditions. To reach any other conclusion would mean that the Legislature intended to eliminate entire classes of physical conditions from receiving the compensation provided for under the Act merely because the condition is not confirmable by a specific type of test, and it is inconceivable that the Legislature intended such a result especially where the condition is confirmable by tests which are routinely and consistently relied upon by the medical profession and where the accuracy and dependability of the procedure is not disputed in the medical profession. Moreover, many of

these conditions are just as disabling, if not more so, than many conditions which are confirmable by tests which do not require a response from the claimant. Consequently, to find that injured employees suffering from such conditions are totally excluded from ever receiving permanent disability benefits simply because their condition is confirmable by a test accepted without question by the medical profession but not this Commission would result in disparate treatment of entire classes of injured employees.

Although the concurring opinion agrees with the result reached by the opinion of the Chairman, the concurring Commissioner expresses the "fear" that the principal opinion could be seen as a retreat from the legislative mandate requiring that permanent disability be supported by objective and measurable physical findings. (At this point we are only considering the term "objective," leaving the term "measurable" for a later discussion in this opinion.)

This court has already considered the "objective" requirement in the cases of *Taco Bell* v. *Finley*, 38 Ark. App. 11, 826 S.W.2d 213 (1992), and *Reeder* v. *Rheem Manufacturing Co.*, 38 Ark. App. 248, 832 S.W.2d 505 (1992). In *Taco Bell* we said the word "objective" means "based on observable phenomena," and we cited *The American Heritage Dictionary* 857 (2d College ed. 1982) as our authority. We said that dictionary also gives a specific medical definition: "Indicating a symptom or condition perceived as a sign of disease by someone other than the person afflicted." We then said "under either definition, in our view, observations made by a doctor as a result of range of motion tests qualify as 'objective physical findings.' " We also said that the Commission was not prohibited by Ark. Code Ann. § 11-9-704(c) from considering "the claimant's testimony about her symptoms, including pain, and the effect of activity on those symptoms" so long as the record contains objective and measurable findings to support the Commission's ultimate determination. And in *Reeder* we said:

It is apparent that the word "determination" as used in the statute might refer either to a determination of impairment made by a doctor or to one made by the Commission. The Commission took the view that unless

the doctor's opinion as to permanent impairment was expressly based on objective and measurable physical findings, it was unworthy of consideration. We think that the word "determination" as used in the statute refers to the Commission's determination of physical impairment. The statute prohibits such a determination unless the record contains supporting "objective and measurable physical or mental findings." Our view is closer to the position taken by the dissenting commissioner: "The statute precludes an award for permanent disability *only* when it would be based *solely* on subjective findings."

38 Ark. App. at 251 (emphasis supplied).

Because of the number of cases now reaching us in which the requirement of "objective" physical or mental findings is involved, we have looked to other states for possible guidance in the meaning and application of this requirement.

Louisiana has a statute, La. Rev. Stat. § 23:1317, which provides that workers' compensation payments are for "such injuries as are proven by competent evidence, of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself." *See Abshire* v. *Dravo Corp.*, 396 So. 2d 521, 523 (La. Ct. App. 1981). This case explained the meaning of the Louisiana statute by quoting from *Drummer* v. *Central Pecan Shelling Co.*, 366 So. 2d 1333 (La. 1978), as follows:

In interpreting the statutory language this Court has indicated that "objective conditions or symptoms" have a broad meaning, including "symptoms of pain, and anguish, such as weakness, pallor . . . sickness, nausea, expressions of pain clearly involuntary, or any other symptoms indicating a deleterious change in the bodily condition . . . ." Accordingly, the objective conditions or symptoms required by the statute are not limited to symptoms of an injury which can be seen or ascertained by touch. Moreover, there need not be a continued exhibition of objective symptoms to entitle the employee to compensation if the injury complained of is causally connected with the original accident.

366 So. 2d at 1335 (citations omitted).

The State of Missouri has a statute, Mo. Rev. Stats. § 287.020[2] (1965), which defines the word "accident" as used in its workers' compensation law as "an unexpected or unforseen event happening suddenly and violently, with or without human fault and *producing at the time objective symptoms of an injury*." (Emphasis added.) In *Todd* v. *Goostree*, 493 S.W.2d 411 (Mo. Ct. App. 1973), the court said "objective symptoms . . . are not limited to external wounds, bruises, and the like which can be seen or ascertained by touch, but include as well all involuntary expression of pain or distress, such as weakness, faintness, pallor or sickness, indicating a deleterious change in the body condition." 493 S.W.2d at 417. In an earlier case, *Schroeder* v. *Western Union Telegraph Co.*, 129 S.W.2d 917 (Mo. Ct. App. 1939), the court said:

> The word "objective" has been defined medically to mean "perceptible to persons other than the patient." Webster's New Internat'l. Dictionary. The term "objective symptoms" has been held to mean those symptoms which a surgeon or physician discovers from an examination of his patient, while "subjective symptoms" are those which he learns from what his patient tells him. The "crazy" actions and irrational "talk" of the claimant on the morning after he received the blow on the head were all "objective symptoms" of insanity following the injury arising out of and in the course of his employment."

129 S.W.2d 922 (citations omitted).

In *Sandel* v. *Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982), the Nebraska Supreme Court construed a provision in the workers' compensation law of that state which defined "accident" as did the statute in Missouri. The Nebraska court said that "symptoms of pain; and anguish, such as weakness, pallor, faintness, sickness, nausea, expressions of pain clearly involuntary, or any other symptoms indicating a deleterious change in the bodily condition may constitute objective symptoms as required by the statute." 317 N.W.2d at 915-16. The court also said, in reference to the evidence before it, "No one can reasonably argue that a swollen arm and the inability to move the arm so as to be able to perform one's work, together with

apparent signs of pain and discomfort requiring medical attention, are not objective symptoms of an injury." 317 N.W.2d at 916.

Looking at the record in the instant case, we note that it was stipulated that appellant had sustained a compensable injury to her chest on May 2, 1988. She testified that after being off a short time she returned to work, and in July 1988, while trying to pull some big shelves apart, she again injured her chest. She was off another couple of days and returned to light duty for four weeks. She injured her chest for the third time just before Christmas that year and, at the time of the hearing on September 25, 1990, had not returned to work.

The appellant testified that she was 43 years old and had a ninth-grade education. Although she once worked, for a short period, as a bank teller, appellant testified she had mainly worked at factory jobs. She said she continues to suffer severe pain with only slight physical exertion and often goes to the emergency room for a shot when her medication does not relieve the pain. According to appellant, the problem is with her right side and she is right-handed; she cannot use her right arm to cook or mop the floor without having pain for several hours afterward; before her injury she enjoyed painting pictures on saw blades and pieces of wood, but she no longer can even do that very well because her arm shakes.

Dr. Randy D. Roberts, a rheumatologist, saw appellant in February of 1989, on referral by another doctor, and diagnosed appellant's condition as "Chest wall syndrome with injury to the costochondral junctions." In a letter to appellant's attorney, dated February 28, 1989, Dr. Roberts stated that appellant "will qualify for a 10 percent permanent partial disability rating based on pain and problems using her upper extremities for any lifting or repetitive activity which exacerbates her discomfort." Subsequently, in a letter to appellee's attorney, Dr. Roberts again rated appellant at 10 percent permanent partial disability and recommended that she not be returned to her former job. He stated, "I reviewed 'light' duties at Darling and could seem to find nothing that was light enough that she could manage with this present condition."

Dr. Hugh Franklin Burnett, a general, thoracic, and vascu-

lar surgeon, testified by deposition that, at the request of the appellee's insurance carrier, he reviewed appellant's records and x-rays and examined her to provide another opinion relative to her symptoms, complaints, findings, and injury. He said it was his opinion that appellant had a costochondritis or inflammation of the cartilages which attach to the sternum and/or muscle strain associated with this." When asked if this was an objective finding or was based upon appellant's subjective complaints, Dr. Burnett stated:

> It relies on both. The fact that she historically had recurrent pain in the anterior chest wall, particularly along either side of the sternum, perhaps, more so on the right than on the left. But in addition to that, the objective finding that there was tenderness over the costal cartilages on either side.

Dr. Burnett also said he had "no reasons to disagree with" Dr. Roberts' opinion that appellant had a 10 percent permanent partial disability rating.

Based upon the evidence and his interpretation of the meaning of the requirement of "measurable physical or mental findings" the opinion of the Chairman of the Commission states "the claimant in the present case failed to establish that the findings are measurable. Therefore, the findings fail to satisfy the second prong of the test . . . ." Since one Commissioner concurred with the Chairman's opinion and one Commissioner dissented on the basis that there were findings "not only objective but measurable as well," it is clear that all three commissioners agree that there were "objective findings" of permanent anatomical impairment. We think the law on the "objective" requirement as stated in the Chairman's discussion is generally correct. It is not, in general, at odds with what this court has previously held in the *Taco Bell* and *Reeder* cases. Moreover, it is not, in general, at odds with the cases we have discussed from Louisiana, Missouri, and Nebraska. So, without embracing every statement in the Chairman's opinion regarding the meaning of the phrase "objective finding," we affirm the Commission's decision on the law and the facts as to the "objective findings" requirement. However, we do not agree with the majority of the Commission on its decision as to the "measurable findings" requirement.

As we have already stated in this opinion, when considering the requirement that "any determination of physical impairment shall be supported by objective and measurable physical or mental findings," we think the word "determination" refers to the Commission's determination. *Reeder, supra.* In making that determination, the opinion of the Chairman of the Commission states that the basis of Dr. Roberts' rating of a 10 percent anatomical impairment "is not readily apparent." The opinion states that Dr. Roberts said his rating was based upon the appellant's pain and problems using her upper extremities for any lifting or repetitive activity which exacerbates her discomfort. The Chairman's opinion says that "while loss of use of the upper extremities may be measurable, there is no evidence explaining how he used these factors to obtain the rating that he assigned." "Consequently," the opinion states, "we find the Claimant failed to prove . . . that she sustained any permanent impairment since she failed to establish that the findings that she presented were measurable."

■ In the first place, we point out that the reasoning relied upon in the Chairman's opinion as to the "objective findings" requirement — that the legislature did not intend to exclude injured employees from ever receiving permanent disability benefits simply because their condition is not confirmable by a test accepted by the medical profession but not by the Commission — is equally applicable to the "measurable findings" requirement. In light of the statutory requirement that the provisions of the Act shall be construed liberally in keeping with its remedial purposes, we think it is error to require a standard of measurability greater than the standard of objectivity. Surely if there are sufficiently objective findings upon which the doctor can make a diagnosis and give treatment, the Commission should not refuse to consider the doctor's findings as to the extent of physical impairment simply because the doctor cannot make a precise measurement of that impairment.

■ In the second place, we cannot be sure that the Chairman's opinion correctly defined the term "measurable." His opinion simply states that "measurable obviously means capable of being quantified in some sense." Although the opinion does not say what "in some sense" means, we do not think it means in a "precise" sense. *Webster's Third New International*

*Dictionary* (Unabridged) (1976) gives one definition of "measurable" as "great enough to be worth consideration." Just as the cases we have cited hold that objective symptoms are not limited to those that can be seen or ascertained by touch, we do not think measurable findings have to be precise. We also do not think that doctors are confined to any specific chart or guideline in making their evaluation of the existence or extent of physical impairment. The State of Oklahoma has a a statute, Okla. Stat. Ann. tit. 85 § 3(11) (1991), which requires "except as otherwise provided herein," that any examining physician shall only evaluate impairment in accordance with the latest publication of The American Medical Association's "Guides to the Evaluation of Permanent Impairment" in effect at the time of the incident for which compensation is sought. *See Davis* v. *Goodrich*, 826 P. 2d 587 (Okla. 1992) (medical report which evaluates permanent impairment in workers' compensation cases must comply with statutory guide.) Had the Arkansas Legislature wanted to prescribe definite guidelines for use in evaluating the extent of physical impairment it could have done as Oklahoma did in that regard.

■ We agree with the opinion of the dissenting Commissioner that measurable findings may involve the extent, degree, dimension, or quantity of the physical condition. In this case there is evidence from the records of Dr. Roberts that appellant suffered from chest wall syndrome with injury to the costochondral junctions and a possible decreased grip in the right hand. The records of Dr. Roberts also report that palpation of the appellant's "chest revealed marked tenderness in the Costochondral junctions bilaterally particularly on the right at 3, 4 and 5, and on the left at 1, 2 and 3." Dr. Burnett, who examined the appellant at the request of the appellee, agreed with Dr. Roberts' diagnosis and testified that tenderness to palpation is considered an objective finding. He indicated that not only did palpation of the costal cartilages elicit an indication of pain, but other locations were palpated also to determine whether or not the complaints of pain were appropriate for the diagnosis he had made. The dissenting Commissioner's observation of this evidence is worth noting:

> Dr. Roberts is obviously referring to the costochondral junctions at these specific ribs as being particularly tender or symptomatic. Since every costochondral junction is not

involved in claimant's symptomatology, and Dr. Roberts is specific about the affected area, Dr. Roberts' findings of tenderness to palpation in this configuration document the *extent* or *dimensions* of claimant's physical condition and are thus, measurable findings.

While it can be argued that these were the initial findings and not indicative of the permanent character of claimant's work-related injury, Dr.Roberts' subsequent reports describe claimant's condition as "not improved," "as previously" found, "much the same", and finally as "permanent." Thus, the initial findings are also the findings documenting claimant's permanent disability. Moreover, even though Dr. Roberts stated that the calcification of the costochondral cartilages found in claimant's x-rays "can be seen in people without any chest wall pain," such findings can be seen in people with chronic costochondritis and are obviously objective and measurable findings corroborating the findings of tenderness to palpation. Therefore, there are sufficient objective and measurable findings in the record to support an award of benefits for a permanent anatomical impairment.

We do not believe that the decision of the Chairman of the Commission, concurred in by another Commissioner, is supported by the law and evidence as to the holding that there is insufficient evidence of measurable physical findings to support a determination of physical impairment. When the term "measurable" is properly construed there is no reason to reject the 10 percent anatomical impairment rating agreed to by both doctors; and when the appellate court is convinced that fair-minded persons, on the same facts, could not have reached the same conclusion arrived at by the Commission, the decision of the Commission must be reversed. *International Paper Co.* v. *Tuberville*, 302 Ark. 22, 27, 786 S.W.2d 830 (1990).

The Chairman's opinion also held that appellant was not entitled to wage loss disability because of the provisions in Ark. Code Ann. § 11-9-522(b) (1987) that deny, under certain circumstances, an injured employee permanent partial benefits in excess of the employee's percentage of permanent physical impairment. To support that holding the opinion states "the

Respondent *apparently* was prepared to allow the Claimant to return to work at a job compatible with her limitations, and a representative for the Respondent testified that a variety of jobs were available." (Emphasis added.) The only representative of the Respondent-Appellee who testified was Ted Mabry who said he was an employee of the appellee and that safety and workers' compensation came within the jurisdiction of his job. He testified that if appellant "had reported" for work she would have been assigned to a job which would have permitted her to work without repetitively lifting as much as fifteen pounds. On cross examination he was asked if the job she would have done would be less strenuous than mopping a floor and he said "Yes." He was then asked if it was more or less repetitive than mopping a floor and he said it was more repetitive. Mabry also said he had sent a list of jobs available to appellant to Dr. Roberts; however, the doctor stated he reviewed the list of available jobs sent to him by Mabry and found none that appellant could do. The appellant testified that she went back to work for appellee on two occasions after her injury and was unable to do the work assigned to her. She also testified that she did not believe appellee had a job that she was able to perform. Although, the Chairman's opinion states that appellant admitted she could do work physically comparable to the bank teller's job she once had, the appellant testified that job was in 1977 and that she would need to go for more schooling to be able to do that work today. We also note that the appellant is 43 years old, has a ninth-grade education, and her treating physician's progress notes of September 15, 1989, state: "I recommend that the patient not be returned to work. I think this is a permanent condition."

Arkansas Code Annotated § 11-9-522(c) (1987) contains two subdivisions which qualify the provisions that limit an injured employee's disability benefits if the employee returns to work or has reasonably obtainable offer to work at wages equal to those made at the time of injury. Those two subdivisions provide (1) that the burden is on the employer to prove the employee returned to work or that he had a reasonably obtainable offer to return to work at equal wages, and (2) that the intent of these provisions is to enable an employer to reduce disability payments when the disability no longer exists or if the employee is discharged for misconduct or leaves work without good cause

connected with the work.

Based on the evidence in the record, the burden of proof, and the purpose of Ark. Code Ann. § 11-9-522(b) and (c), we do not believe the Commission's decision to deny wage loss compensation under the provisions of Ark. Code Ann. § 11-9-522(b) is supported by the law and the evidence.

We reverse the Commissions' decision and remand with directions to assess appellant's permanent physical impairment and her permanent partial disability benefits.

Reversed and remanded.

COOPER and ROGERS, JJ., agree.