Carla L. LOVE *v.* DIRECTOR,
Arkansas Employment Security Department;
and Brentwood Industries, Inc.

E 99-212                                    30 S.W.3d 750

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered November 15, 2000

No briefs filed.

JOSEPHINE LINKER HART, Judge. Carla Love appeals a decision of the Arkansas Board of Review ("Board") that reversed the Appeal Tribunal's award of unemployment insurance benefits and concluded that she was disqualified from receiving those benefits because of her misconduct in connection with her work. After her termination, appellant sought benefits and stated that she was in constant contact with Brentwood Industries, Inc. ("Brentwood"), her employer, regarding her hand injuries, that she was excused from work by her treating physician, and that she was informed by appellee that there was no longer any work available for her when both of her hands began bothering her. We affirm.

Appellant was employed by Brentwood from April 30, 1996, until her termination on April 26, 1999. Beginning June 1, 1997, Brentwood's attendance policy, a copy of which appellant acknowledged receiving, provided that if an employee accumulated 6.5 occurrences[1], then he was given a written warning; if he incurred 6.5 additional occurrences in the next six-month period, then he was placed on probation and monitored during the following year; and if he received three more occurrences within six months of the monitoring year, then the employee was subject to termination.

While employed by Brentwood, appellant suffered from work-related carpal tunnel syndrome for which she received uncontroverted workers' compensation benefits, including medical expenses for her October 7, 1998, surgery to her right wrist. Appellant returned to work the following day and was later allowed, under her physician's orders, to perform some light-duty work, including work that involved writing. During the first several days after she

---

[1] One tardiness equaled one-half occurrence; and one day's absence equaled one occurrence.

returned to work, appellant mainly sat in the conference room because the medications she took apparently prevented her from working. Thereafter, she was provided light-duty work — such as filling glue bottles with her left hand, picking up clothes pins, taking off clothes pins, and some cleaning — but she complained that she was unable to perform those functions. In addition, Brentwood gave her clerical assignments, and during her last week at work, she was cleaning the break room, which included cleaning table-tops and a refrigerator with a wet rag, and removing trash from the parking lot.

Despite these offerings of light-duty work, appellant was excessively absent from work. Specifically, she was absent the following days: on the 19th and part of the 26th of August, 1998; on the 11th, 19th, and 26th of September, 1998; on the 6th, 19th, and 26th through 28th of October, 1998; on the 3rd, 8th, 9th, 28th, 30th and 31st of December, 1998; on the 4th through 30th of January, 1999; on the 1st through 3rd, and part of the 8th of February, 1999; and on the 6th and 19th of April, 1999. Despite her numerous absences, appellant offered only one note from her doctor that plainly excused her from work, but the note only excused her from work for two weeks.

The Board noted in its decision that appellant "acknowledged in her testimony that she was aware the employer required medical substantiation of the need to miss work and of her failure to provide such substantiation." In particular, the Board found that appellant was reminded

> that her employer did not have medical documentation substantiating her need to be off work, although [a] . . . letter written in December 1998 was apparently written after the claimant had obtained [the] . . . excuse for two of the weeks of work she missed in December but before the employer's personnel manager learned of that. Even after receiving the December letter, [appellant] . . . missed most of January 1999, and the first medical statement she provided was dated mid-month and was not an excuse from work but a restatement of her ability to perform light duty work. It was [appellant's] . . . responsibility to provide medical documentation needed to support her time off work.

Finally, despite receiving a written warning and a three-day suspension for excessive absences in December, 1998, the Board found

that appellant admitted she was absent from work all day on April 19, 1999, because of vehicle problems notwithstanding the fact that her vehicle was repaired mid-way through her shift. The Board, accordingly, concluded that appellant's failure to provide timely medical documentation supporting the overwhelming majority of her absences and her absence on April 19 constituted misconduct that justified a denial of unemployment compensation benefits pursuant to Ark. Code Ann. § 11-10-514 (Repl. 1996). From that decision, comes this appeal.

■ As we recently stated in *Barb's 3-D Demo Serv. v. Director,* 69 Ark. App. 350, 354, 13 S.W.3d 206, 208 (2000) (citations omitted), our scope of appellate review in cases such as this is limited:

> On appeal, the findings of the Board of Review are conclusive if they are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it.

■ The evidence when viewed through this narrow scope of review demonstrates that appellant knew of Brentwood's attendance policy, knew that she was required to provide medical documentation to substantiate her absences, and failed to provide the requisite information to Brentwood. The statutory authority on which the Board relied is Ark. Code Ann. § 11-10-514(a), which provides that "an individual shall be disqualified for benefits if he was discharged from his last work for misconduct in connection with the work." The seminal decision concerning "misconduct" as used in this statute is *Nibco, Inc. v. Metcalf,* 1 Ark. App. 114, 118, 613 S.W.2d 612, 614 (1981), where we announced the following definition of the term:

> [M]isconduct involves: (1) disregard of the employer's interests, (2) violation of the employer's rules, (3) disregard of the standards of behavior which the employer has a right to expect of his employees, and (4) disregard of the employee's duties and obligations to his employer.

> To constitute misconduct, however, the definitions require more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good faith error in judgment or discretion. There must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design.

*See also Niece v. Director,* 67 Ark. App. 109, 112, 992 S.W.2d 169, 171 (1999).

■ In the case at bar, we conclude that Brentwood had a legitimate interest in information concerning when and if injured employees were excused from work by their treating physicians. Certainly such information was needed to properly plan for labor requirements. The intentional or deliberate failure to furnish such information was a willful disregard of the employer's interest and of the standards of behavior that it had a right to expect of its employees. There was no substantial evidence in this case to support a finding that the failure to furnish this information was not intentional or deliberate. The decision of the Board of Review is, therefore, affirmed.

Affirmed.

ROBBINS, C.J., and JENNINGS, CRABTREE, and MEADS, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. I cannot agree to affirm the Board of Review's decision denying benefits in this unemployment case upon the finding that the claimant was discharged for misconduct connected with her work. Rather, I would reverse and remand with instructions that the Board of Review award benefits.

Arkansas Code Annotated Section 11-10-514(a)(2)(Supp. 1999) requires that in all cases of discharge for absenteeism, ". . . the reasons for the absenteeism shall be taken into consideration for purposes of determining whether the absenteeism constitutes misconduct." We have frequently stated that to constitute misconduct, there must be more than mere inefficiency, unsatisfactory conduct,

failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good-faith error in judgment or discretion; there must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design. *See Carraro v. Dir.*, 54 Ark. App. 210, 924 S.W.2d 819 (1996).

Carla Love suffered a work-related injury (carpal tunnel syndrome) that caused her to miss a considerable amount of work. While the Board of Review did not "consider the absences due to the work-related injuries, in and of themselves, to be willful acts against the employer's best interests as would constitute misconduct connected with the work within the meaning of the law, as they were matters beyond the claimant's control," the Board denied Love's unemployment claim because she failed to provide medical statements excusing her from work. The claimant provided medical statements indicating that she needed light-duty work. The employer had light-duty work available that the claimant did not believe she could perform. She also missed part of her work day on April 19, 1999, due to vehicle problems.

The record fully shows that the employer terminated the claimant after she was unable to do "light duty" work that was plainly inconsistent with the restrictions imposed by her attending doctor. The claimant underwent a carpal tunnel release procedure on her right hand on October 7, 1998, and returned to work the following day. Although her doctor consistently indicated that she was not to be assigned to work involving repetitive use of her hands, the employer's "light duty" assignments required the claimant to fill glue bottles, pick up clothespins, and engage in filing, tasks which involved repetitive hand movements. Filling the glue bottles required claimant to unscrew the bottle tops, pour glue into the bottles using a spigot, and rescrew the bottle tops.

Despite the fact that the employer had a workers' compensation insurance representative to monitor the claim and interact with the attending doctor concerning work assignments and whether the claimant was authorized to be off work, the record does not show that the insurance representative did so. Rather, the record shows that the employer deliberately continued assigning the claimant to such "light duty" work involving repetitive hand movements even

after her left hand developed symptoms and despite the fact that the attending doctor's written statements indicated that she should have such work if it involved "*NO repetitive use of hands. Otherwise, cannot work.*" Even after the claimant inquired about getting a leave of absence, the employer would not accommodate her.

Our duty to affirm the Board of Review when its decisions are supported by substantial evidence does not compel us to ignore how the employer in this case disregarded restrictions outlined by the claimant's attending physician despite knowing that the claimant was unable to work unless the restrictions were followed. The employer then terminated the claimant for missing work and refused to pay unemployment benefits. I cannot join the view that the claimant willfully or wantonly acted in disregard of the employer's interest where the employer's conduct put her health at risk. Thus, I would reverse the Board of Review and remand the claim so that benefits can be awarded.

I respectfully dissent.