2009 Ark. App. 209
**Robert SALLY, Appellant,**

v.

**SERVICE MASTER and AIG Claim Service, Appellees.**

**No. CA 08–847.**

Court of Appeals of Arkansas.

March 18, 2009.

Rehearing Denied April 22, 2009.

8

John Barttelt, Jonesboro, for appellant.

Worley, Wood & Parrish, P.A., by Melissa Wood, Little Rock, for appellees.

KAREN R. BAKER, Judge.

Appellant Robert Sally challenges the Workers' Compensation Commission's denial of benefits asserting that no substantial evidence supports the decision of the Commission reversing the administrative law judge's findings that appellant sustained a work-related injury for which appellees, employer Service Master and insurance carrier A.I.G. Claim Services, were liable. We find merit to appellant's argument and reverse and remand for an award of benefits.

In this case, there is no dispute that appellant suffered from carpal-tunnel syndrome that was the sole cause of his disability and need for treatment. The issue to be resolved is whether appellant's injuries are compensable because they were work related. Appellant worked as a janitor for various companies for approximately twenty years before going to work for appellee Service Master. The record contains no medical reports evidencing that appellant had received treatment relative to upper extremity (wrist) soreness, numbness, tingling, or swelling prior to August 2006. He began working for appellee in June 2005. He first experienced pain in

his hands a year later, June 2006, corresponding with additional duties involving the use of a floor scrubber. Prior to the change in duties, appellant successfully performed his assigned job duties throughout the summer of 2005, and the regular school year of 2005 through 2006. However, during the summer of 2006, appellant's job duties and work location changed. He was assigned to work on the floor crew, maintaining the floors at two facilities. During his eight-hour shift, appellant spent a substantial amount of time stripping floors, which included operating a motorized side-by-side scrubber, running continuously, moving cleaning liquid over the floors. To operate the machine, appellant gripped levers located at both sides of the scrubber handle, held down both levers, and maintain that grip for a minimum of twenty-five-minute intervals. The machine, which resembled a lawnmower with a two-foot pad instead of wheels, would move from side to side during this operation. Appellant would then use a large wet/dry vacuum to remove the cleaning liquid from the floors.

Appellant testified that starting in June 2006, and coinciding with the change in duties, he began to experience pain symptoms in his upper extremities, the left worse than the right. The claimant testified that the pain was in the middle of his wrists. He explained that he could not bend his left wrist, and, assuming he had sprained it, he purchased an immobilizing device for his left wrist from Walgreens. Despite his efforts, the pain gradually worsened until August 31, 2006 when he went to the emergency room. He was examined, treated, and diagnosed with carpal tunnel syndrome.

The medical history of the August 31, 2006, emergency room visit reflected that appellant had experienced intermittent pain which had become constant, resulting in his seeking emergency treatment. He received treatment during the August 31/September 1, 2006 emergency room visit, as well as a diagnosis of his complaint. Medical directives required him to remain off work the following day as well as the date of the diagnostic test. Appellant was also provided medication and prescriptions for additional medication. The administrative law judge found that "credible evidence reflects that [appellant] was unaware of the ailment 'carpal tunnel syndrome' prior to his August 31, 2006, visit to the emergency room ..." and that he first learned that he had carpal tunnel syndrome on that visit.

In addition, appellant testified that he notified his employer on September 1, of the diagnosis. The employer denied this and claimed that sometime in August appellant said he suffered from carpal tunnel syndrome. A nerve conduction test objectively confirmed gradual onset injuries on September 7, 2006. On September 20, 2006, he notified his employer that he was claiming a workers' compensation injury. By October 10, 2006, the condition prevented him from working.

The administrative law judge awarded benefits. The majority of the Commission reversed and denied benefits stating that appellant "cannot prove that his injury arose out of his employment." The Commission reasoned that appellant "never told the respondent employer when he was seeking medical attention that it was for a work-related injury." It further justified the denial by stating that it gave more weight to the employer's statement that appellant had told his employer in August just before school started that he had carpal tunnel rather than the September 1 date of notice testified to by appellant.

In giving more weight to the employer's testimony, the Commission reasoned as follows:

Uncorroborated testimony of an interested party is always considered to be controverted. This rule applies to a non-party witness whose testimony might be biased. *Burnett v. Philadelphia Life Ins. Co.*, 81 Ark.App. 300, 101 S.W.3d 843 (2003). It is not arbitrary to choose not to credit such testimony. *Id.* The testimony of an interested party is taken as disputed as a matter of law whether offered on his own behalf or on the behalf of another interested party. *Knoles v. Salazar*, 298 Ark. 281, 766 S.W.2d 613 (1989). Therefore, we find that [appellant] has failed to prove by a preponderance of the evidence that his carpal tunnel arose out of and in the course and scope of his employment.

■ In reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences in the light most favorable to the Commission's findings and affirm if supported by substantial evidence. *Arkansas Dep't of Health v. Williams*, 43 Ark.App. 169, 863 S.W.2d 583 (1993). Substantial evidence exists if reasonable minds could have reached the same conclusion. *Plante v. Tyson Foods, Inc.*, 319 Ark. 126, 890 S.W.2d 253 (1994). Matters of credibility are exclusively within the Commission's domain, *id.*, and the testimony of an interested party is always considered to be controverted. *Cooper v. Hiland Dairy*, 69 Ark.App. 200, 11 S.W.3d 5 (2000). Despite this deferential standard regarding credibility issues on appellate review, the Commission must be able to clearly state the reasons for its determination of credibility, especially when that determination is contrary to the findings of the administrative law judge (ALJ) who actually observed the witnesses, because the Commission is limited to reviewing the record. *Patterson v. Frito Lay, Inc.*, 66 Ark.App. 159, 992 S.W.2d 130 (1999) (holding that Workers' Compensation Commission's bare statement that it had reviewed the record and determined that the claimant lacked credibility was insufficient to support such a finding, absent any identified reasons for statement or evidence to support finding, and thus Commission arbitrarily disregarded the testimony of the witnesses and reached its conclusion based on speculation and conjecture).

■ In this case, the Commission's disregard of appellant's testimony based upon his status as an interested party cannot sustain the Commission's credibility determination under these facts. The Commission specifically discredited appellant's testimony because he was an interested party while simultaneously crediting the testimony of the employer's representative, another interested party to the matter. The Commission's credibility determination directly contradicted the administrative law judge's assessment of the witnesses' trustworthiness. Merely relying upon appellant's status as an interested party is insufficient to support disregarding his testimony on these facts.

■ Appellant testified that he notified his supervisor, Ms. Finchem, who testified for the employer, of his emergency room visit and the diagnosis as rendered by the attending emergency room physician. Appellee took no action toward either completing an accident report, filing a workers' compensation claim, or investigating the matter on September 1, 2006. Appellant continued to discharge his assigned duties while wearing the bilateral wrist splints that were provided during the emergency room visit and that replaced appellant's wrist support purchased by him at Walgreens.

It was only after appellant presented for further medical treatment, and discussed his job duties and the diagnosis from the September 7, 2006, nerve conduction study

that he learned that he could file a claim for workers' compensation benefits. On September 20, Ms. Finchem completed the required reports. The Commission relies upon, and appellees argue, the fact that appellant was furnished with information regarding the procedure for filing workers' compensation claims during orientation at the time of his employment to suggest that his delay in filing a claim undermines his credibility regarding the onset of his injury. This reliance is further supported by Ms. Finchem's testimony that appellant first identified carpal tunnel as the reason for his need to wear support on his wrist in August, shortly before the school term started rather than September 1, after the emergency room visit.

■ However, even giving the employer's testimony its fullest force, this testimony does not support the denial of benefits. Carpal-tunnel syndrome is recognized as a gradual-onset injury; hence, it is not necessary that a claimant prove that his carpal-tunnel injury was caused by rapid, repetitive motion. *Freeman v. Con–Agra Frozen Foods,* 344 Ark. 296, 40 S.W.3d 760 (2001). The very nature of the injury acknowledges that awareness of the injury and its causation will take time. Significantly, for this analysis, the timely reporting of an injury has no bearing on the compensability of a claim. *Service Chevrolet v. Atwood,* 61 Ark.App. 190, 966 S.W.2d 909 (1998)(overruled on other grounds).

The difference of a few weeks in notice of the injury is, in this case, irrelevant. The Commission dismissed appellant's claims that his carpal tunnel was work related based upon a failure to timely notify his employer. The implication is that the failure to report the injury somehow created the impression that he had the condition for a long time before it incapacitated him. The Commission then said

"[e]ven if we were to find that the claimant sustained a compensable injury in the form of bilateral carpal tunnel syndrome, a finding we do not make, we find that the respondent did not receive notice of the injury until September 20, 2006 .... The claimant was well aware of the procedure for filing claims."

It is undisputed that carpal-tunnel syndrome is the basis for appellant's disability and need for treatment. The only issue to decide is whether the condition was related to appellant's work. Nothing in the record indicates another cause for appellant's carpal-tunnel syndrome, and the medical records show no evidence of any carpal tunnel symptoms prior to appellant presenting at the emergency room on September 1, 2006. Under these circumstances, we agree that there is no substantial evidence to sustain the Commission's refusal to make an award. *See Heptinstall v. Asplundh Tree Expert Co.,* 84 Ark.App. 215, 220, 137 S.W.3d 421, 424 (2003) (holding that if the claimant's disability arises soon after the accident and is logically attributable to it, *with nothing to suggest any other explanation for the employee's condition,* we may say without hesitation that there is no substantial evidence to sustain the Commission's refusal to make an award); *Bates v. Frost Logging Co.,* 38 Ark.App. 36, 40, 827 S.W.2d 664, 666 (1992).

Accordingly, we reverse and remand for an award of benefits.

VAUGHT, C.J., ROBBINS and GRUBER, JJ., agree.

GLADWIN and HENRY, JJ., dissent.

GLADWIN, J., dissenting.

I believe that there is substantial evidence to support the Commission's denial of benefits; therefore, I respectfully dissent. The Commission found that appel-

**12**

lant failed to prove that his carpal-tunnel syndrome was work related. In addition to the facts set out in the majority opinion, Ms. Finchem also testified about the operation of the roto as follows:

> The roto is operated by him, but it's not a tight hand-on, squeeze motion. You can really relax your hands. The machine vibrates and your hand is there to control it. You don't grip onto it and you know real hard.... You're basically there to guide it.... You don't ever grab hold of a roto and try to clamp down, because it will get away from you.

In determining the sufficiency of the evidence to support decisions of the Commission, we view evidence with all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence, i.e., evidence a reasonable person might accept as adequate to support the conclusion. *Singleton v. City of Pine Bluff*, 97 Ark.App. 59, 244 S.W.3d 709 (2006). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Wal–Mart Stores, Inc. v. Sands*, 80 Ark.App. 51, 91 S.W.3d 93 (2002). Where as here, the Commission has denied a claim because of the claimant's failure to meet his burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Williams v. Ark. Oak Flooring Co.*, 267 Ark. 810, 590 S.W.2d 328 (Ark.App.1979). Questions of weight and credibility are within the sole province of the Commission, which is not required to believe the testimony of any witness, but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Strickland v. Primex Technologies*, 82 Ark.App. 570, 120 S.W.3d 166 (2003). Once the Commission has made its decision on issues of credibility, the appellate court is bound by that decision. *Cottage Café, Inc. v. Collette*, 94 Ark.App. 72, 226 S.W.3d 27 (2006).

Here, the Commission weighed the evidence and found that appellant "cannot prove that his injury arose out of his employment." It gave more weight to appellee's employer's testimony than to appellant's. Clearly, the Commission is entitled to weigh the evidence. Matters of credibility are squarely within the Commission's domain, *Plante v. Tyson Foods, Inc.*, 319 Ark. 126, 890 S.W.2d 253 (1994), and the testimony of an interested party is always considered controverted. *Cooper v. Hiland Dairy*, 69 Ark.App. 200, 11 S.W.3d 5 (2000).

The Commission had the right to weigh the testimony of all witnesses, just as it did. Because our standard of review leaves questions of weight and credibility within the sole province of the Commission, we should not re-weigh the evidence. Accordingly, I would affirm.

HENRY, J., joins.