2009 Ark. App. 349

**Rafael BALLESTEROS, Appellant,**

v.

**TYSON POULTRY, INC. and Tynet Corporation, Appellees.**

**No. CA 08–1390.**

Court of Appeals of Arkansas.

April 29, 2009.

Tolley & Brooks, P.A., by Evelyn E. Brooks, Fayetteville, for appellant.

Ledbetter, Cogbill, Arnold & Harrison, LLP, by E. Diane Graham and Farrah L. Fielder, Fort Smith, for appellees.

KAREN R. BAKER, Judge.

Appellant Rafael Ballesteros challenges the Workers' Compensation Commission's denial of benefits for a disputed period of time based upon the Commission's finding that appellant had falsified a prescription by altering the prescription refill number from a 0 to a 3, and that falsifying "work documents" is a legitimate company policy under which altering the prescription justified appellant's termination by appellees Tyson Poultry, Inc. and Tynet Corporation (Tyson). Appellant argues that Tyson had no reasonable cause for termination in that appellant was fired for an unproven, non-work-related criminal allegation. However, the focus of the reasonable-cause analysis is on the employer's rightful expectations of appellant regarding the prescription and appellant's willful disregard of the employer's interest in the alteration of the prescription. The altered prescription was directly related to the employer's legal duty to compensate appellant for all reasonable and necessary medical treatment arising from a work-related injury. The employee's alteration destroyed the integrity of the record and directly affected the evaluation of the employer's fulfillment of its legal duty and business planning. Tyson had a right to expect appellant to respect the integrity of the claims process. Accordingly, we find no error and affirm.

Appellant was a forty-two-year-old man who began working for Tyson in July 1998. Over the years he performed various jobs. On June 25, 2006, he saw a water leak in a boiler room. After he and a supervisor closed the water valves, appellant pushed a button to start a pump in order to move the water. He felt a shock "all over" his body, momentarily lost consciousness, and struck his left knee as he fell. After regaining consciousness, he could not move his leg. Appellant testified that he was provided ice for his knee but not offered any additional medical treatment at that time.

Although appellant was not scheduled to work the next day, he went to the nurse at Tyson's plant. As a result of that appointment, an evaluation by Dr. Moffitt was scheduled for June 27, 2006. Dr. Moffitt noted that appellant's knee was swollen

and indicated that he might have a displaced fracture of the distal femur. Because it was difficult to interpret the x-ray, Dr. Moffitt ordered a CT scan of the knee. Appellant was given crutches, medication, and advised to avoid weight bearing on his left extremity. Dr. Moffitt also indicated that appellant could return to work with Tyson with no weight bearing on his left leg. Appellant returned to work sitting in a chair in a control room monitoring temperatures on a computer.

A CT scan performed on July 5, 2006, revealed a small amount of swelling, tripartite patella, and no acute fracture. Following the CT scan, appellant was evaluated by Dr. Berestnev on July 12, 2006, and diagnosed with a left medial collateral ligament strain. Exercises were recommended and appellant was advised to begin some weight bearing on the leg. He was also given a short knee immobilizer. Significantly for this analysis, Dr. Berestnev also prescribed pain medication. At the time Dr. Berestnev wrote the prescription, appellant was accompanied by his daughter, Jasmine Ballesteros. According to both appellant's and his daughter's testimony, appellant handed the prescription to his daughter and they drove to Walgreens to have it filled. Appellant stated that he turned in the prescription to the pharmacist at Walgreens and waited more than one hour without the prescription being filled. He explained that he was notified that a problem existed with the prescription and he was to contact his employer.

The prescription form in question contains a space next to the notation "Refills." A "0" has an "X" marked through it with the numeral "3" written in. Dr. Berestnev's office indicated that the prescription had been altered and notified Tyson of the assessment. A registered nurse in the clinic with Dr. Berestnev testified that she received a phone call from the pharmacist at Walgreens regarding the suspicious prescription, then received a copy of the document in question by fax, and subsequently forwarded the altered prescription by fax to Tyson. She described the office procedure for altering a written prescription. The policy specifically required shredding the original and writing out a replacement prescription. She also testified that she had never seen Dr. Moffitt or Dr. Berestnev cross out something on a prescription, change it, and then give the prescription to a patient.

When appellant went to the Tyson plant later on July 12, he was given a three day suspension pursuant to company policy for the purpose of allowing him the opportunity to clear up the discrepancy with the prescription. After three days had passed, he was terminated for gross misconduct for falsifying a record. He did not work again until August 16, 2006, when he began employment with another company.

Appellant continued to receive medical treatment from Dr. Berestnev who ordered physical therapy and an MRI of appellant's left knee. On August 24, 2006, Dr. Berestnev released appellant to full duty without restriction; however, on September 24, 2006, Dr. Moffitt indicated that appellant continued to have pain despite treatment with physical therapy and medication and referred appellant to Dr. Pleimann, an orthopaedist. Dr. Pleimann treated appellant for a period of time before referring him to Dr. Tom Coker for the purpose of determining whether further intervention was warranted. Dr. Coker subsequently recommended an arthroscopic procedure of the left knee, which was performed on February 27, 2007. Appellant reserved for consideration any issues with regard to compensation benefits beginning with the date of his surgery.

Tyson accepted appellant's injury as compensable and paid some compensation benefits including medical treatment. In addition, Tyson began paying temporary total disability benefits at some point around the time of his surgery in February 2007. A majority of the Commission denied benefits beginning from appellant's date of termination continuing through February 27, 2007, adopting the administrative law judge's reasoning.

In reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences in the light most favorable to the Commission's findings and affirm if supported by substantial evidence. *Sally v. Service Master*, 2009 Ark.App. 209, 301 S.W.3d 7. Substantial evidence exists if reasonable minds could have reached the same conclusion. *Id.* Matters of credibility are exclusively within the Commission's domain. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Dorris v. Townsends of Ark., Inc.,* 93 Ark.App. 208, 218 S.W.3d 351 (2005).

Sufficient evidence supports the Commission's determination that appellant altered the number of refills on the prescription. The nurse's testimony established the doctor's office procedure regarding the changing of a prescription, which required the shredding of any document that no longer reflected the accurate order and the office personnel's strict adherence to that policy. She confirmed that the pharmacy reported the suspected change directly to the doctor's office upon receipt of the prescription containing the alteration increasing the number of available refills. Although appellant denied changing the doctor's order, discrepancies in the testimony are for the Commission to re-solve. *Sally, supra.* We cannot say that fair minds could not have reached the finding that appellant was responsible for the change in the number of refills.

Neither can we find error in the Commission's decision that appellant's alteration of the prescription justified Tyson's termination of appellant's employment. Arkansas Code Annotated section 11-9-505 (Repl.2002 & Supp.2007) requires that to receive benefits an employee must prove the following by a preponderance of the evidence: (1) that he sustained a compensable injury; (2) that suitable employment which is within his physical and mental limitations is available with the employer; (3) that the employer has refused to return him to work; and (4) that the employer's refusal to return him to work is without reasonable cause.

In the context of a workers' compensation claim, a termination of employment amounts to a refusal to return an employee to work unless the employee was terminated for reasonable cause connected with the work. *Roark v. Pocahontas Nursing & Rehab.,* 95 Ark.App. 176, 235 S.W.3d 527 (2006). In affirming a denial of unemployment benefits, this court has found that an employee's failure to provide doctor's orders explaining her work absences justified her termination resulting in the denial of unemployment benefits. *Love v. Director, Ark. Employment Sec. Dep't,* 71 Ark.App. 396, 30 S.W.3d 750 (2000). The court reasoned that accurate information regarding the employee's asserted medical excuses was necessary for the employer to properly plan for labor requirements:

> In the case at bar, we conclude that Brentwood had a legitimate interest in information concerning when and if injured employees were excused from work by their treating physicians.

Certainly such information was needed to properly plan for labor requirements. The intentional or deliberate failure to furnish such information was a willful disregard of the employer's interest and of the standards of behavior that it had a right to expect of its employees. There was no substantial evidence in this case to support a finding that the failure to furnish this information was not intentional or deliberate. The decision of the Board of Review is, therefore, affirmed.

*Love,* 71 Ark.App. at 400, 30 S.W.3d at 752–53.

Tyson similarly had a legitimate interest concerning when and if injured employees were being treated by physicians with the prescription of medication and the length of time the employee would be under the influence of the medication. Accurate information regarding the employee's injury and treatment is necessary to ensure the evaluation of the employee's compensable claim, to determine whether the employer has work within the injured employee's physical and mental limitations, as well as to ensure the employer's compliance with safety on the worksite and its ability to properly plan for labor requirements.

Appellant argues that the prescription was not a work-production record and that personal medical treatment is not connected to the type of business that Tyson conducts; therefore, the prescription could not be considered a work record subject to the policy regarding falsification of work records. The argument is unpersuasive. Appellant obtained the prescription as a result of an injury he claimed was compensable pursuant to our workers' compensation law. Our statutory framework places liability upon an employer for payment of all reasonable and necessary medical treatment, including medication. The alteration of the authorized refills falsifies a record that directly impacts the determination of the [8]employer's legal obligation to its employee in addition to the employer's fulfillment of state law. Therefore, accurate records regarding appellant's condition were necessary for both business planning of the day to day operations as well as for meeting statutory requirements. Accordingly, we find no error in the Commission's decision and affirm.

Affirmed.

VAUGHT, C.J., and MARSHALL, J., agree.