**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00056-CR**
_____

**JOHN DAVID COLLETTI, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

___

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 17-02-02174-CR**

___

**MEMORANDUM OPINION**

A jury found Appellant John David Colletti guilty of possession with intent to deliver a controlled substance, namely four grams or more but less than 200 grams of methamphetamine. *See* Tex. Health & Safety Code Ann. § 481.112(d) (West 2017). The indictment alleged a prior felony conviction for enhancement purposes. The trial court found the enhancement true and sentenced Colletti to twenty years' confinement. In four issues, Colletti appeals his conviction. We affirm.

1

A grand jury indicted Colletti for manufacture or possession of a controlled substance—methamphetamine—with intent to deliver, in an amount of four grams or more but less than 200 grams, with allegations of a prior felony conviction. Colletti pleaded "not guilty" to the offense and "not true" to the enhancement.

Testimony of Sergeant Clyde Vogel

Sergeant Clyde Vogel, with the Conroe Police Department (CPD), testified that he commonly works with a confidential informant (CI) on narcotics cases because drug users are unlikely to engage directly with police officers, even undercover officers. Vogel testified that he used a paid CI in this case. The CI had worked before as a CI, and had some criminal and drug history, but Vogel believed the CI was credible and reliable. According to Vogel, the CI had called him and said he knew where he could get a quarter ounce of methamphetamine, and Vogel, Detective Foxworth, and a DEA agent met with the CI and searched him and his car before the buy. Vogel testified that the officers gave the CI $200 and an audio/video recording device that allowed the officers to observe events in "almost real[-]time[,]" with a two-to-three second lag time. Vogel and Detective Foxworth followed the CI in one car, and the DEA agent followed in another car as the CI drove to a house on Paradise Cove in Willis. The officers parked at some distance away from the house

to avoid being identified. According to Vogel, they also placed a GPS tracking device on the CI's vehicle.

Vogel testified that with video of the events, although he could not see the physical exchange of narcotics, he could hear the CI and Colletti talking about the price and he could hear Colletti counting the money. According to Vogel, he had obtained a photograph of Colletti beforehand, he was able to identify Colletti in the video counting money and in a still photograph taken from the video recording, and he also identified the defendant in the courtroom as Colletti. Upon the CI's return to the officers' location, the officers searched the CI and his car again and paid the CI. The officers received the purchased drugs from the CI, logged them in at the police department as evidence, and the drugs were then sent to the Texas Department of Public Safety (DPS) for testing. Vogel identified State's Exhibit 1 as the video of the buy transaction, and the video was published to the jury.

Testimony of Detective Joseph Foxworth

Detective Joseph Foxworth, a narcotics detective for the CPD, testified that he usually works with CIs and that CIs commonly have a criminal history. Foxworth agreed that he worked with Sergeant Vogel on the Colletti case. According to Foxworth, he and Vogel searched the CI and his vehicle and gave the CI a recording device before he went to make the narcotics purchase. Foxworth testified that he and

3

Vogel followed the CI up to a point and then watched the live video feed. Following the buy, Foxworth observed the CI hand over the purchased drugs to Vogel, the recording device was deactivated, and the CI and vehicle were searched again. The drugs were taken back to the police department and logged as evidence and later sent to DPS for testing.

Testimony of the DEA Agent

The DEA agent testified that he is a special agent and he has worked with the CPD targeting methamphetamine distributors. He explained that he became interested in Colletti because of multiple "cooperators" who had approached CPD detectives identifying Colletti as a distributor as well as Colletti's Facebook posts. The DEA agent testified that Sergeant Vogel told him that a CI might be able to buy from Colletti. According to the DEA agent, he watched everything that happened in the Colletti case—including the searches of the CI and his vehicle and the CI turning over the drugs to the officers—except for "the actual transaction of the money for the dope[]" and the live video of the buy.

Testimony of Cheryl Szkudlarek

Cheryl Szkudlarek testified that she is a forensic scientist with the DPS Safety Crime Lab in Houston, and she was an analyst on the case. Szkudlarek testified that the substance she tested weighed 6.71 grams and her analysis identified the

4

substance as containing methamphetamine. Szkudlarek's lab report for the CPD was entered into evidence.

Testimony of the CI

The State called the CI to testify, and he testified that he worked with the CPD and, in working with Sergeant Vogel, he would purchase illegal narcotics. The CI agreed he had some criminal history, including using methamphetamine, theft, and possession of a controlled substance. According to the CI, he would be paid between $150 and $400 for each case he brought to the CPD.

The CI agreed that on February 5, 2016, he met with police, who searched him and his vehicle and gave him $200 before he went to Colletti's house to buy methamphetamine. He agreed that the officers also gave him a recording device to record the transaction. The CI gave Colletti the money and Colletti gave him the drugs, after which the CI returned to the officers, who then searched him and his vehicle again, and he gave the drugs to the officers. The CI identified Colletti as the individual who sold him drugs on February 5, 2016. The CI also testified that he mentioned "Robert" to Colletti, a name the CI made up, and that the CI believed Colletti thought the CI planned to resell the drugs to "Robert."

<u>Covert Witness Instruction</u>

In two issues, Colletti argues that he was denied the effective assistance of counsel because his trial attorney failed to request a covert witness instruction and that without such an instruction, there was not legally sufficient evidence to support Colletti's conviction. Colletti argues that had a covert witness instruction been given, the jurors could have been "empowered . . . to outright disregard" the CI's testimony if they found it insufficiently corroborated. Colletti argues that the evidence was insufficient to support the jury's verdict and that he was prejudiced as a result of his trial counsel's failure to request such an instruction because the other evidence, aside from the CI's testimony, was a "dark, low-quality video" and testimony of officers who did not go to Colletti's house, did not track the CI, and did not adequately track the money for the controlled buy.

A defendant cannot be convicted of an offense under Chapter 481 on the testimony of a confidential informant acting as a covert agent "unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed." Tex. Code Crim. Proc. Ann. art. 38.141(a) (West 2005). When weighing the sufficiency of the evidence under the covert-witness rule, we apply the same standard for corroboration used for the accomplice-witness rule. *Malone v. State*, 253 S.W.3d 253, 258 (Tex. Crim. App. 2008); *see also* Tex. Code Crim. Proc.

Ann. art. 38.14 (West 2005), 38.141. When weighing the sufficiency of corroborating evidence under article 38.141(a), a reviewing court must exclude the testimony of the covert agent from consideration and examine the remaining evidence to determine whether there is evidence that tends to connect the defendant to the commission of the offense. *See Malone*, 253 S.W.3d at 258. We view the independent evidence in the light most favorable to the jury's verdict to determine whether it tends to link the defendant to the crime. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008).

We consider the combined weight of the non-informant evidence, even if that evidence is entirely circumstantial. *See Padilla v. State*, 462 S.W.3d 117, 126 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (citing *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)); *see also Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013) ("A criminal conviction may be based upon circumstantial evidence."). The corroborating evidence does not need to be sufficient by itself to establish that the accused is guilty beyond a reasonable doubt. *Smith v. State*, 392 S.W.3d 190, 195 (Tex. App.—San Antonio 2012, pet. ref'd). Likewise, the corroborating evidence need not directly link the accused to the offense. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). Though "mere presence" is insufficient corroboration, evidence that the accused was at or near the scene when

or about when it was committed may sufficiently tend to connect the accused to the crime, provided the evidence is "coupled with other suspicious circumstances[.]" *Malone*, 253 S.W.3d at 257; *Brown v. State*, 159 S.W.3d 703, 708 (Tex. App.—Texarkana 2004, pet. ref'd). Corroboration does not require a set quantum of proof. *Malone*, 253 S.W.3d at 257. "[T]he evidence must simply link the accused in some way to the commission of the crime and show that 'rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense.'" *Id.* at 257 (quoting *Hernandez v. State*, 939 S.W.2d 173, 179 (Tex. Crim. App. 1997)).

When the State relies on testimony that is required by statute to be corroborated, it is error for the trial court not to instruct the jury that the defendant cannot be convicted on that testimony unless there is other evidence tending to connect the defendant with the offense and that evidence showing only the commission of the offense is insufficient. *See Simmons v. State*, 205 S.W.3d 65, 77 (Tex. App.—Fort Worth 2006, no pet.) (failure to instruct jury on requirement of corroboration of informant's testimony is error); *Jefferson v. State*, 99 S.W.3d 790, 793 (Tex. App.—Eastland 2003, pet. ref'd) (same); *cf. Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002) (failure to instruct jury about requirement of corroboration of accomplice-witness testimony was error). The jury charge here did not include an independent-corroboration instruction.

Because Colletti did not object to the charge, we may reverse Colletti's conviction on this basis only if we determine that he was egregiously harmed by the error. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). Under the egregious-harm standard, the omission of a corroborating-evidence instruction may be rendered harmless if evidence of other non-informant testimony exists that fulfills the purpose of the instruction. *See Herron*, 86 S.W.3d at 632. The purpose of the instruction is to inform the jury that it cannot use an informant's testimony unless it determines that other evidence exists connecting the defendant to the offense. *Id.* If other evidence exists, the purpose of the instruction may have been fulfilled. *Id.*; *see also Simmons*, 205 S.W.3d at 77.

In this case, the drug deal between Colletti and the CI was recorded on audio and video, it was observed in "almost real[-]time" at a distance by two law enforcement officers, and the recording of the transaction was delivered directly to the officers. The CI was searched before and after the controlled buy, he took money given to him by Officer Vogel, and after meeting with Colletti, the CI returned to the officers without the money but with methamphetamine. Given the additional evidence linking Colletti to the charged offense, we cannot say that Colletti was egregiously harmed by the omission of a corroborating-evidence instruction, and we conclude that the evidence is sufficient to meet the corroboration requirement of

9

article 38.141. *See Pena v. State*, 251 S.W.3d 601, 608 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

<u>Effective Assistance of Counsel</u>

A defendant has a Sixth Amendment right to the effective assistance of counsel at trial. U.S. Const. amend. VI; *see Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). To establish that he received ineffective assistance of counsel, Colletti must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687-88, 694. The party alleging ineffective assistance has the burden to develop facts and details necessary to support the claim. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). A party asserting an ineffective-assistance claim must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 689). An appellant's failure to make either of the required showings of deficient performance or sufficient prejudice defeats the claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Williams v. State*, 301 S.W.3d

10

675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

The right to effective assistance of counsel ensures the right to "reasonably effective assistance[,]" and it does not require that counsel must be perfect or that the representation must be errorless. *See Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). The appropriate context is the totality of the representation; counsel should not be judged on isolated portions of his representation. *See Thompson*, 9 S.W.3d at 813; *Solis v. State*, 792 S.W.2d 95, 98 (Tex. Crim. App. 1990). Isolated failures to object to improper evidence or argument ordinarily do not constitute ineffective assistance of counsel. *See Ingham*, 679 S.W.2d at 509; *Ewing v. State*, 549 S.W.2d 392, 395 (Tex. Crim. App. 1977). To meet his burden on his claim that his counsel was ineffective for failing to object to evidence, an appellant must also establish that the trial court would have committed error in overruling that objection had the objection been made. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996).

Ordinarily, on direct appeal, the record will not have been sufficiently developed during the trial to demonstrate in the appeal that trial counsel provided ineffective assistance under the *Strickland* standards. *Menefield v. State*, 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012). Before we denounce trial counsel's actions as

11

ineffective, counsel should normally be given an opportunity to explain the challenged actions. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). When counsel has not been given an opportunity to explain the challenged actions, we will find deficient performance only when the conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Id.* (internal citations omitted).

The Court of Criminal Appeals has held that when the State's case for conviction depends heavily on the testimony of the accomplice witness, trial counsel's failure to request an accomplice-witness corroboration instruction constitutes deficient performance under the first *Strickland* prong. *See Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009). Assuming without deciding that and the failure to request a corroboration instruction would constitute deficient performance, we must still determine whether there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See id.* at 352-53 (citing *Strickland*, 466 U.S. at 692).

The record reflects that a significant amount of non-covert-witness testimony was presented at trial, including the testimony of three law enforcement officers in addition to the recording of events. As we have already explained, this other evidence tends to connect Colletti to the offense committed, and Colletti points to

12

no evidence in the record that would provide a rational basis on which the jury could have doubted or disregarded that evidence. A jury may choose to believe or disbelieve any witness, or any portion of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). The non-covert-witness evidence, if believed, established that Colletti was at or near the scene of the offense at or near the time of its commission and that after meeting with Colletti, the officers found the CI to possess methamphetamine but not the "buy" money the CI received from Sergeant Vogel. Given the non-covert-witness evidence that tended to connect Colletti to the offense committed, Colletti has not met his burden to prove that, but for counsel's deficient performance, the result of the jury trial would have been different. *See Davis*, 278 S.W.3d at 352-53. As a result, we conclude that Colletti has failed to satisfy the second *Strickland* prong, and we overrule Colletti's first and second issues.

## Confrontation Clause

In his third issue, Colletti argues that the trial court erred in limiting the scope of cross-examination of the CI. According to Colletti, when the trial court limited cross-examination, the jury was unable to hear testimony about the CI's criminal history and financial need. Colletti suggests this testimony was relevant in showing the CI's bias, motive to create false allegations, and efforts to "curry favor" with the

police and obtain more opportunities to work as a CI. Colletti argues that by limiting the cross-examination of the CI, he was deprived of his Sixth Amendment Confrontation Clause right.

To preserve error on Confrontation Clause grounds, a defendant must make a sufficiently specific objection on that basis. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (concluding that because the defendant failed properly to preserve his Confrontation Clause claim, he forfeited his right to appellate review on that claim); *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (same); *see also* Tex. R. App. P. 33.1(a)(1). The record shows that during trial, Colletti's counsel did not argue that the Confrontation Clause demanded that Colletti be given the opportunity to cross-examine the CI. Colletti's attorney argued at trial that the CI's prior convictions were admissible under the Rule 609 for impeachment purposes. Thus, Colletti failed to articulate a Confrontation Clause objection to the trial court, depriving the trial court of the opportunity to rule upon its admissibility based on the rationale Colletti presented on appeal. *See Reyna*, 168 S.W.3d at 179; *Smallwood v. State*, 471 S.W.3d 601, 614 (Tex. App.—Fort Worth 2015, pet. ref'd). Because Colletti failed to preserve error based on Confrontation Clause grounds, we overrule his third issue. *See Reyna*, 168 S.W.3d at 179; *Paredes*, 129 S.W.3d at 535; *Smallwood*, 471 S.W.3d at 614; *see also* Tex. R. App. P. 33.1(a)(1).

14

Exclusion of Evidence of CI's Prior Convictions

Colletti also argues that the trial court erred in excluding evidence of the CI's prior criminal conviction for terroristic threat-family member and that such evidence was admissible under Rule 609 as a crime of moral turpitude. According to Colletti, excluding this evidence "deprived the jury of the ability to understand the full, relevant background of [CI] and assess his credibility as a witness in the context of his conduct in the very recent past."

Generally, an appellate court reviews the trial court's exclusion of impeachment evidence for an abuse of discretion. *See Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992); *Morris v. State*, 214 S.W.3d 159, 187 (Tex. App.—Beaumont 2007), *aff'd*, 301 S.W.3d 281 (Tex. Crim. App. 2009). If the trial court's decision falls within the zone of reasonable disagreement, it will be upheld. *Buntion v. State*, 482 S.W.3d 58, 71 (Tex. Crim. App. 2016) (citing *Freeman v. State*, 340 S.W.3d 717, 724 (Tex. Crim. App. 2011)). When the trial court's evidentiary ruling can be sustained under any theory of law that applies to the case, the ruling will not be reversed on appeal. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Rule 609(a) provides that witness credibility may be attacked by admitting evidence that the witness previously has been convicted of a felony or crime of moral turpitude if the trial court determines that the probative value of

admitting the evidence simply outweighs its prejudicial effect. *See* Tex. R. Evid. 609(a); *Meadows v. State*, 455 S.W.3d 166, 170 (Tex. Crim. App. 2015).

Assuming without deciding that the CI's conviction for "terroristic threat-family member" is a crime of moral turpitude, we conclude the trial court did not abuse its discretion in concluding that the probative value of the excluded evidence did not outweigh its prejudicial effect. There is a non-exclusive list of factors that we consider when determining whether the probative value of a prior conviction outweighs its prejudicial effect, including: (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history; (3) the similarity between the prior conviction and the offense being prosecuted; (4) the importance of the witness's testimony; and (5) the importance of the credibility issue. *See Theus*, 845 S.W.2d at 880; *Leyba v. State*, 416 S.W.3d 563, 571 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (considering the *Theus* factors in determining admissibility under Texas Rule of Evidence 609(b)). These factors are also relevant when a defendant wishes to impeach a prosecution witness with a prior conviction. *Theus*, 845 S.W.2d at 880. The impeachment value of crimes that involve deception is higher than those involving violence, while crimes involving violence have a higher potential for prejudice. *Id.* at 881. If the prior conviction relates more to deception, then the first

16

factor weighs in favor of admission. *Id.* That said, if the prior conviction involves violence, then this factor weighs in favor of exclusion. *See id.*

Here, the CI's conviction for terroristic threat-family member is not a crime involving deception but rather a crime involving the threat of violence. *See id.* Therefore, this factor weighs in favor of exclusion and not admission. *See id.* Regarding the second factor—temporal proximity—the CI's conviction for terroristic threat was in September 2015 while his testimony at trial was in December 2017. Given the limited information in the record about the offense, we do not find this factor to weigh in favor of admission. As to the third factor—the similarity between the prior conviction and the offense being prosecuted—we find this factor does not weigh in favor of admission because there is no similarity and the CI was serving as a witness and was not being prosecuted as the defendant. As for the fourth and fifth *Theus* factors—the importance of the witness's testimony and the importance of the credibility issue—the CI was not the only witness to testify that Colletti possessed a controlled substance with the intent to manufacture or distribute. Three law enforcement officers testified that the CI returned from a controlled buy and that he obtained the methamphetamine from Colletti. Sergeant Vogel testified that he watched the video of events in "almost real[-]time" during which he could hear the CI and Colletti talking about the price and he could hear Colletti counting

the money. The video of events was admitted into evidence. Because the CI was not the only witness who testified regarding the controlled buy from Colletti, these two factors do not weigh in favor of admission. *See id.*

Applying the *Theus* factors to the excluded evidence that Colletti challenges, we conclude that it was within the zone of reasonable disagreement for the trial court to have excluded evidence of the CI's prior conviction for terroristic threat-family member because the prejudicial effect of such evidence substantially outweighed its probative value. *See* Tex. R. Evid. 609; *Theus*, 845 S.W.2d at 880; *Morris*, 214 S.W.3d at 187-88 (applying *Theus* factors and concluding the prejudicial value of evidence of a prior conviction was significant). We overrule Colletti's fourth issue. We affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on April 17, 2019
Opinion Delivered July 10, 2019
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.